ARGUED AND DETERMINED

· IN THE

# COURT OF APPEALS

OF

# MARYLAND.

---

JOSEPH GOODBURN AND ANN B. HIS WIFE, *vs.* SAMUEL STEVENS AND OTHERS.—*June,* 1847.

Upon an appeal from an order of the Court of Chancery determining a question of right between the parties, and directing an account to be stated on the principle of such determination, in pursuance of the act of 1845, ch. 367, this court can only inquire into the correctness of the principles announced by the Chancellor as the basis of the auditor's report.

This court cannot consider any other questions than those determined by the court below for the government of the auditor, without exercising original jurisdiction.

Although a partnership be fixed for a particular term, yet it is understood as an implied condition or reservation, unless the contrary is expressly stipulated, that it is dissolved by the death of either of the partners, at any time within the period.

Where a partner died in 1825, and his administratrix and widow in 1830 filed her bill, charging that the personal property of her husband had been employed in the business of the partnership by the defendants, and prayed that they may be compelled to account for the profits made since her husband's death out of the personal property, it was her right, at her election, to demand either the actual profits made by the survivors from the use of her husband's share of the partnership property, or interest upon the capital thus employed.

Such being her right, the assertion of it cannot be justly regarded as evidence of an assent on her part to the continuation of the partnership, so as to im-

1    v.5

plicate her as partner;—or as a ratification of the acts of the surviving partners.

Surviving partners who show by their answer to a bill filed for an account by the administratrix of a deceased partner, that they never consented to receive her as a partner after the death of her intestate, and acknowledge their liability to account, cannot claim to have the partnership accounts brought down to a period subsequent to the dissolution caused by death.

When a partnership is dissolved by death of a partner, the accounts are to be taken at that time, for the purpose of ascertaining the condition of the partnership, and the rights of the respective partners to the joint property.

Where it appeared that real estate had been used by a partnership for a long series of years in the manufacture of iron, and that upon the death of any partner, his heirs at law, to whom the land descended, came into the partnership in his place, and there was no proof of any articles of partnership, it was held, that the whole partnership estate, whether consisting of real or personal property, was to be regarded in equity as a consolidated fund to be appropriated primarily and exclusively to the satisfaction of partnership debts.

In the absence of any agreement between partners direct or implied, impressing upon their real estate the character of personalty, the true rule is that the interest of a deceased partner in the partnership lands, is to be treated as real estate, and that his widow is entitled to a suitable allowance out of the proceeds of the sale of the partnership lands, as an equivalent for her dower, provided the partnership shall be found to have been solvent at the period of its dissolution.

The doctrine that real estate purchased with the partnership funds for its use, and on its account, is to be regarded in a Court of Equity, as the personal estate of the company for all the purposes of the company, stands upon the familiar and just principle of constructive trust, resulting from the relation which the partners bear to each other, and from the fact, that the estate was brought into the firm, or purchased with the funds of the partnership for the convenience and accommodation of the trade.

Upon the death of a partner, the legal estate of which he was seized as tenant in common passes to his heirs or devisees, clothed with a similar trust in favor or the surviving partners, until the purposes for which it was acquired have been accomplished.

When the partnership accounts are fully and finally settled, in the absence of an express or implied agreement to convert the real into personal estate, no solid reason can be assigned, why the real estate should not be treated in equity, as at law, according to its real nature, and chargeable with the widow's dower.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 15th January, 1830, by *Ann B. W. Hayes,* and alleged that she, on or about the 9th December, 1824, intermarried with a certain *Samuel Hayes,* who afterwards, to wit: on the 20th May, 1825, departed this life

intestate and without issue; that at the time of his death, the said *S. H.* was seized and possessed of, or otherwise entitled to forty-seven hundredths of a large and extensive manufacturing establishment, situate in *Cecil* county, Maryland, commonly called and known by the name of *Elk Forge*, consisting of several thousand acres of land, two large forges, a grist mill, saw mill, dwelling houses, blacksmith shop, and various other buildings, situated on the waters of *Big Elk Creek;* also a grist mill, oil mill, and nail factory, with a dwelling house and other out houses, commonly called and known by the name of *Marley Mills*, situate on the waters of *Little Elk Creek*, and about one hundred acres of land lying in the States of *Delaware* and *Virginia*, and from twelve to fifteen thousand dollars worth of personal property thereto attached; that for many years, the business of this copartnership had been carried on under the firm and style of *Samuel Hayes & Company;* the said company consisting at the time of *his death*, of the said *S. H.*, and of *Samuel Stevens* and *Eliza Stevens his wife*, *Maria Rudulph*, *&c., &c.*, that the said *S. H.* at the time of his death, left your oratrix his widow, and the said *Maria Rudulph*, *John Hayes*, a certain *Henry M. Hayes*, *&c., &c.*, his heirs at law ; that she hath been informed and verily believes, that the said *Samuel Hayes* acquired twenty-five hundredths or one-fourth part of said co-partnership property, by purchase from a certain *William Seal*, for the sum, &c., and for the purpose of securing him, he executed his mortgage to the said *William Seal* of the interest so purchased, and that at the time of his death, there remained due and unpaid about, &c. on mortgage, and he also owed other debts, to the amount of seven hundred dollars or thereabouts, that the residue of the said *Samuel Hayes'* property, did not exceed the value of five hundred dollars, and consisted of personal property and a lot of ground, with a log tenement of little or no value. And your oratrix hath been informed, and charges the fact to be, that at the time of the death of the said *S. H.*, the said firm owed few or no debts, and the debts due and owing to them, and which have long since been collected by said surviving partners were more than sufficient to pay all the debts due by

said firm, and there was at the time of his death, a considerable profit for division among the said partners. That she had made repeated efforts to prevail on the surviving partners of her said husband to settle the partnership accounts, and to make her such allowance for her interest in the same as might be reasonable and just; but finding all these efforts unavailing, she on the 26th September, 1825, obtained letters of administration from, &c., on her said husband's personal property, hoping and expecting that in her united character of widow and administratrix, she might be able to obtain a final and just settlement of said partnership property and interest. But in this, she has been entirely disappointed, and your oratrix has at last, lost all hopes of an amicable adjustment of her fair claims. In the meantime, the said surviving partners have carried on the business under the firm and style of *S. H. & Co.*, employing as the manager a certain *James Jackson.* They have torn down the old, and built up in its place a large new forge on *Big Elk;* they have erected a large and expensive stone dam on the *Little Elk,* destroyed the grist mill and built an entire new forge, and as your oratrix believes these expensive improvements have been made entirely from the profits of said concern; and they have divided among themselves a large and annual sum exceeding as your oratrix has been informed, three thousand dollars, current money, per annum; and during all this time, your oratrix has not received the sum one of hundred dollars; and the said *William Seal* has been paid only the interest due, on the residue of the before mentioned mortgage; to the end therefore, that the said surviving partners may be restrained from using the said partnership name of *S. H. & Co.;* that they may be enjoined from using *the share or proportion of the personal property* which belonged to the said *Samuel Hayes;* that a receiver may be appointed to receive the profits of said concern, until this matter shall be fully considered in this Honorable Court, that the said surviving partners may be compelled to render a full, true and perfect account of all the transactions of said concern; that they may be compelled to pay off and satisfy the debt, due to the said

*William Seal*, from that portion of said concern, which was originally bought of him; that they may be required to pay over to your oratrix as administratrix of the said *Samuel Hayes*, his share or proportion of the personal property of said concern as well as his share or proportion of the profits which have accrued thereon since his death; that your oratrix may have a reasonable and just allowance made for her dower in her said husband's interest in said lands and premises, and that the said surviving partners, and the said *James Jackson* their manager, may answer this bill, &c., and its various special interrogatories; and that your oratrix may receive such other and further relief as may be agreeable to equity and good conscience, also for an injunction and subpœna.

On the 18th January, 1830, the Chancellor (BLAND) ordered an injunction and subpœna.

The defendants *Samuel Stevens* and *Eliza M.*, his wife, answered the bill and admitted that the husband of the complainant had a considerable interest in the manufacturing establishment spoken of by the complainant in her bill of complaint, and they believe that his interest was nearly, if not quite as great as the complainant sets forth in her bill of complaint. But these defendants state they are informed, and believe it to be true, that the husband of the complainant acquired by purchase, one-fourth of said interest from a certain *William Seal*, and that the purchase money has not yet been paid for it. These defendants claiming no part of the estate of *S. H.*, (the husband of the complainant) have no particular interest in the question, whether the money yet due to the said *William Seal*, is to be paid out of the personal or real estate, but they are advised that the personal estate is the proper fund for the payment of it, and that the same ought to be so applied. These defendants admit the marriage of the complainant, the death of her husband without children, and intestate, and that the complainant has adminstered on his estate; they also believe it to be true that the several dates of these events are correctly given, and they admit the same to be correct. They also

admit that the names of the heirs at law of said *Samuel Hayes* are correctly set forth in the said bill of complaint.

They futher answering, admit that the business spoken of in the bill of complaint, was for several years carried on under the firm and style of *S. H. & Co.*, and these defendants are willing to admit that at the time of the death of the said *S. H.*, the names of the parties interested in said partnership, are correctly stated in the bill.   These defendants state, that since the said works have been carried on, different persons have at diferent times been interested in them, the said *S. H.* himself purchased the interest of some, and became as heir entitled to the interest of others, and at the time of his death his interest in the lands and the buildings and improvements thereon, descended to his heirs, who consented to a continuance of the business for the benefit of themselves and of those to whom the said real estate belongs.

These defendants do not presume that the complainant, as administratrix, can claim any interest in or control over the business of said partnership since the death of her husband. These defendants do not know what amount of debts was due from said *S. H.* at the time of his death, nor what estate he left to pay them with.   They expressly deny the charge, that they have opposed a settlement of the claims of the complainant, on the contrary, they are willing the same should take place, and that a decree should be passed for the purpose. These defendants have not that particular knowledge of the business which would enable them to state the amount of the claims against the concern, or of debts due to them at the time of the death of the said *S. H.*, nor of the profits of said concern.   The said *S. H.* had for some time before his death been the active manager of the business.   The information relative to claims and profits may be had from the books of the concern, to which these defendants refer, and the production of which can be required.   These defendants believe it to be true, and admit that since the death of said *S. H.*, a new forge has been built in place of the old one, which would no longer answer the purposes of the concern; and other changes

have been made as stated in the bill of complaint; to these it is presumed the complainant cannot object. The interest of her husband in the real property did not descend to her, and his heirs are now partners in the business. These alterations cannot diminish the claim of the complainant, or the security for her claim, on account of the personal estate. In regard to the personal property of the said partnership at the time of the death of said *S. H.*, these defendants are informed and believe it to be true, that an inventory thereof was taken about the time of the death of the said *S. H.*, that the amount thereof was upwards of $10,000, that it consisted principally of iron, which was to be sold, and afterwards was sold, and of provisions which were to be consumed, and it is to be presumed were consumed at the works—of coal, which of course was not to be kept, but for which the individuals who upon the death of said *S. H.* became interested in the partnership concerns must account. There were of course, horses, wagons, tools and implements; these it was not expected upon the death of any partner would be divided among the individuals, but would remain on the premises for the use of those still carrying on the business; and the deceased partner upon a settlement of his accounts, to be allowed a fair price for his proportion of said property, most, if not all of such articles, it is to be presumed, would in the course of four or five years, be dead, consumed or disposed of, and others be procured to supply their places. Of these, it would be impossible for these defendants now to give an account, but the inventory taken about the time of the death of the said *S. H.*, and already spoken of, will furnish all the evidence which the complainant can want or require, in order to ascertain if any thing be due to her, as administratrix, in which character alone these defendants are advised, she can claim any such account. These defendants do not admit that when a fair and full settlement takes place, there is any balance due to the said *S. H.* It will be found as stated in the bill, that the interest of said *S. H.* in the concern was considerable; that at the time of his death, as well as for some time previously, nearly one-half of the

land belonged to him; the expenses of such concern were necessarily great, and these expenses were principally defrayed out of the profits of the business, the said *S. H.* as well as the others consenting to it, and being willing thus to invest his profits, and thereby add to the value of his real estate, for much of the land claimed by the said *S. H.*, as the bill of complaint truly states, the said *Samuel Hayes* had not paid; and these defendants are advised that the personal estate ought in the first instance, to be applied to the payment of his debts. These defendants deny the charge that the defendants have divided among themselves a large and annual sum.    These defendants state, that the business in which with the other partners they are now engaged, was commenced about thirty years ago, and was then carried on under the firm and style of *Robert May & Co.*; at that time the owners of the land and premises were *Robert May*, *Joshua Seal*, &c.    This defendant, *Eliza M.*, is the daughter of the said *Robert May*, and is entitled to his interest.    These defendants have parted with no portion of that interest, and claim none other in the works. The interest of *Joshua Seal* was afterwards, these defendants are informed, transferred to *William Seal*, who subsequently sold, as stated in the bill of complaint, to the husband of the complainant; the interest of *John Hayes* and *Stephen Hayes* have been transferred, and have descended at different times to different persons, and the partnership has been carried on for the benefit of those who at the time owned the property. The husband of the complainant claimed at the time of his death, *Seal's* part and a portion of the original interests of the two *Hayes'* before named; with these claims however, these defendants have no concern.    They claim the one-fourth and only the one-fourth part of the property and the profits, and they claim the whole of the interest of *Robert May*, (father of this defendant, *Eliza M.*,) and claim no interest in either of the other (originally) three equal parts.    These defendants have as yet received for profits of this estate very little; the expenses of keeping in repair and enlarging the establishment, not authorising an actual payment to the parties of the dividend

of profits which have accrued at any time. But these defendants are informed and believe, that the husband of the complainant, who, for ten or eleven years before his death, and until his death, was the manager of said partnership concerns, and received a salary therefor, did during his life draw his salary, and also his proportion of the profits, and was indebted the concern two or three hundred dollars. These defendants therefore, while they are ready and willing to have a settlement of the concerns of the company, so as to ascertain whether anything can be claimed by the personal representative of said *Samuel Hayes* of the concern, and are willing also that the partnership name of *S. H. & Co.* be no longer used, do object to and protest against the appointment of a receiver to take charge of the property and receive the profits of said concern; the complainant, these defendants are advised, can claim no right to exercise a control over the said partnership concern as administratrix, she may demand a settlement of the account between her intestate and those who, during his life, were his co-partners, and it is not pretended that if there be any balance due to the intestate of the complainant, there is any charge that the same cannot be recovered, or that the personal property or the business of the concern is diminished; as the widow of the said *Samuel Hayes* she may assert her claim to dower; but in this character she cannot claim any right to meddle with the partnership business. While these defendants cannot deny to the complainant a right to assert all her claims, they insist that the appointment of a receiver at the instance of the complainant, would be a wanton violation of the just rights of these defendants, upon the motion of a person having no interest in common with the defendants, and no pretext of right to interfere with and prejudice their interests. The answer of the defendant, *James Jackson,* who is the agent of the company, will show it is expected, the amount of pig and bar iron, and of materials, and which were on hand at the time of the death of said *Samuel Hayes.*

These defendants must rely upon him to furnish such information, and upon the books of the concern to furnish whatever

information is wanted of the situation of its affairs at any particular time, to whom the said partnership was indebted, who were its debtors, what sales and purchases were made on account of the concern, and all the information which may be wanted in order to a fair and full settlement of the account of the said *Samuel Hayes* with the other partners. The complainant has not specified in her bill of complaint, at what period of time her husband became the purchaser of the several interests to which, as a partner in the concern, he acquired title, &c.

The other defendants also answered the bill, and exhibited therewith, accounts current; schedule of the interests of the various partners in the partnership property; inventories of its personal property, taken on the 1st May, 1825; of the personal property of *Samuel Hayes*, and list of balances due to, and by the partnership.

Exceptions were taken to the answers by the complainants.

The defendants moved for a dissolution of the injunction, and on the 22d July, 1830, the Chancellor (BLAND) passed the following order.

" With respect to the real estate of which the plaintiff claims dower, I consider the answers as sufficiently full and explicit; and. as regards the share of the personal estate which the plaintiff claims as the administratrix and widow of the late *Samuel Hayes*, due to him at the time of his death, it appears, that he had been the manager of the manufacturing establishment, an account of which is called for, some years before, and up to the time of his death; and therefore, these defendants have answered as fully and particularly as was in their power. The act of 1798, ch. 84, gives to parties a right to call for books, writings and papers, and in a partnership of the complicated and extensive nature which this seems to have been, it is sufficient for the surviving partners to answer in general terms, to a general call for an account, with reference to an offer to produce the books of the concern, unless the bill states, as it does not in this instance, that they have some particular knowledge of the affairs of the partnership, other than what

may be derived from the books so offered to be produced; and such statements are not denied or sufficiently explained away."

" Whereupon it is ordered, that the said exceptions to the answers of the several defendants be, and the same are hereby overruled, without costs—and it is further ordered, that the injunction heretofore granted in this case, so far as it extends to prohibiting the defendants from using the share or proportion of the personal property which belonged to the said *Samuel Hayes*, be, and the same is hereby dissolved; and as to all else, the same is hereby continued until the final hearing or further order."

On the 5th June, 1833, the cause was referred to the auditor by consent, with liberty to take proof, and a great variety of testimony was taken.

In August, 1841, *Mrs. Hayes* having in the meanwhile married the appellant *Joseph H. Goodburn*, a petition was filed to make him a co-complainant in the cause.

On the 31st August, a decree was passed by consent for the sale of the partnership property in the proceedings mentioned, and a trustee appointed for that purpose.

At July term, 1844, this cause was by order of the Chancellor consolidated with several other causes affecting the partnership property, which made the assignees of *William Seal's* mortgage, and creditors of the partnership—parties hereto.

On the 21st October, 1845, after much proof had been taken, the auditor of the court appointed specially by consent in this cause, reported that the accounts stated by him are comprised in various schedules, marked G, No. 1 to 12 inclusive.

" The auditor reported that he had assumed the books of the firm of *Samuel Hayes & Co.* and their successors, called for by the complainants, and exhibited by the defendants, as evidence in the cause, and has assumed the accuracy of various schedules, from A to E, filed in the cause on the 5th March, 1841, as to names, amounts, and additions, and has assumed also, after rejecting the credits of real estate $1,928 75, and $2,877 63 in schedule D, that the co-partnership of *Samuel Hayes & Co.* was insolvent. He has assumed also, that the partnership termi-

nated with the death of *Samuel Hayes* in May, 1825, from which period, his widow and administratrix had no interest or concern as partner in its concerns. Proceeding with these principles, he states, that Exhibit No. 1 shows the debts due the firm, and the sums never realized by it from its debtors. That statement G, No. 2, shows the state of the firm, independent of its real property, at the death of *Samuel Hayes*, from which account, all sums due the partners for dividends and profits as credited on the books are excluded, and from which it appears, that the sum of $14,197 33 ought to be divided among the partners, being the balance received by the surviving partners in 1825.

Statement G, No. 3, shows the balances due the various members of the firm for dividends and profits, and particularly the interest of the deceased in those profits, as they appear on the books of the firm, collected in schedule D, and demonstrate the insolvency of the firm in their personal estate.

G, No. 4, parts 1 and 2, shows the interest of *Samuel Hayes* in the firm, and how that interest accrued by purchase, and by inheritance.

G, No. 5, shows the balances due on the bonds of *Samuel Hayes* for the property purchased of *William Seal;* at the time of *Hayes'* death, all the interest due was paid, and the sum of $4,845 32 was due for principal. The heirs of *Samuel Hayes* claim to throw that debt upon his personal estate; but as that estate is also insolvent, they have only credit in account G, No. 10, for $3,685 15. The balance is thrown upon the real estate of *Samuel Hayes* before the dower of his widow is estimated, that estate being under mortgage at the time of his death.

Account G, No. 6, shows the various sums for interest paid by the surviving partners of *Samuel Hayes & Co.* upon the bond of their deceased partner, between the years 1825 and 1838, amounting to $2,952 13. This accountant has given these defendants no credit for those payments, considering them made in their own wrong. If the surviving partners had settled the estate promptly, they would have paid *Mrs. Hayes*

in 1826, or 1827, $3,818 81, with which she could have paid off much of the debt to *Seal;* but they elect to keep that debt unpaid—pay the interest of it, and now claim to pay it out of the proceeds of the sum which they so withheld: while this accountant reports that the heir-at-law has an undoubted right to throw claims upon the real property, for payment upon the personal estate; yet where he holds both funds, and keeps back the personal estate, it would be unjust to allow him interest to the detriment of the widow's dower. The unpaid principal of the mortgage is only deducted in these accounts, in estimating the widow's dower. Statements G, No. 8 and 9, show the sum due the assignee of *Seal's* bonds, with interest to 1st September, 1845. These debts, the defendants, survivors of *Samuel Hayes,* agreed to pay, seeking their reimbursement as far as they are entitled to it, out of the personal estate of the deceased obligor, they claim to be substituted to *Seal* and his assignees as against that estate.

Statement G, No. 10, shows the basis of the estimate for the purpose of ascertaining *Mrs. Hayes'* dower, and is brought down to the time of the first sale under this decree, 8th Dec'r, 1841. It is supposed that after that time, the Chancellor will allow *Mrs. Hayes* a proportion of the proceeds of sales, looking to her age and state of health; but as the sales are not yet completed that allowance cannot now be made. G, No. 11, is stated to marshall the assets of *Samuel Hayes,* to show what proportion of *Seal's* debt is paid by the personal estate of the deceased, in the hands of his surviving partners, to wit: $3,685 15.

G, No. 12, shows the sums due *Mrs. Hayes* on the 8th December, 1841.

This accountant reports to your Honor, that as the principal part of this sum is due for dower, he is in doubt whether the surviving partners of *Samuel Hayes & Co.* are jointly liable for the whole sum. He supposes they are not so liable, but that each surviving partner is only liable to the extent of the real property which he inherited from *Samuel Hayes,* the deceased; if so, this accountant requests directions from your Honor how

he is to state such an account, whether the heirs only are chargeable—whether each heir is chargeable separately, or the whole jointly. If all the defendants who jointly used the real property in connexion with their business as partners after *Hayes*' death, are jointly liable for the whole, the parties so liable may be readily ascertained; but if they are not so liable, some further proof to show the extent of their respective interests will be necessary."

On the 22d Oct. 1845, the special auditor submitted the following additional report:

" That no articles of partnership between *Samuel Hayes* and his survivors appear in this cause; a partnership is established by inference of law, but no *definite* limitation can be inferred, neither its duration, nor to the terms on which it is to be conducted after the death of any partner is established. It results that upon the death of *Samuel Hayes*, his personal representatives, or his heirs-at-law, or the surviving partners might demand its full and final settlement, a partition of the land, and distribution of the personal estate; *Mrs. Hayes* sought a settlement, and the answers insist that the defendants were willing to settle with her, but nothing was done, and the first bill was filed in 1830,—meanwhile, the heirs-at-law of *Samuel Hayes*, and the surviving partners of *S. H. & Co.*, the tenants in common with the heirs aforesaid, proceed to use the property, personal and real, and make the profits stated in schedule G, No. 13. It appears then, that the heirs of *Samuel Hayes*, and the surviving partners undertook by common consent in the pursuit of a common purpose, for their common and exclusive benefit, to use the whole estate, real ,and personal, of the partnership, and took no measures to satisfy the legal and equitable rights of *Mrs. Hayes;* under these circumstances, the accountant reports that the heirs of *Samuel Hayes*, and his surviving partners now in being, should be held responsible to *Mrs. Goodburn* for the whole sum, jointly stated in account G, No. 12, as due her, and that it should be first paid out of the proceeds of sales reported in this cause."

" 22 Oct. 1845."

Goodburn and wife *vs.* Stevens et al.—1847.

Both parties filed exceptions to the auditor's account; but as the subjects of those exceptions were not carried up on this appeal, they are here omitted.

On the hearing of the exceptions, the Chancellor (BLAND) on the 19th January, 1846, ordered that this cause be, and the same is hereby again referred to the said special auditor, with directions to restate the accounts from the pleadings and proofs now in the case, and from such other proofs as may be laid before him. " It must be recollected, that the persons of whom the partnership in the proceedings mentioned, has been constituted, are to be considered as having been endowed with two separate legal capacities, *first*, with that of an associated conventional capacity as a partnership; and *secondly*, with that of a natural capacity belonging to them as individuals; and that as the social, artificial, capacity of a partnership is entirely distinct from the natural capacity of each individual; and as each legal capacity stands, in all cases, as a distinct person, these two capacities of these parties must be carefully observed, and treated throughout this case, as distinct persons. In respect to all property belonging to the partnership, and so long as such property may be so held, or be continued under the control of this court in this suit, the accounts are to commence with the original formation of the partnership, and to be brought down through all its mutations, by any changes of the persons by whom it was constituted, unto its final dissolution by the decree of the 31st day of August, in the year 1841. The partnership might have been treated as having been terminated by the death of *Samuel Hayes,* deceased; but his representatives so far from asking for its then dissolution, have, some of them, insisted on its continuance, and as his widow and administratrix has only called for a settlement, on the apparent presumption of its continuance, the partnership must therefore be taken to have been so continued, on its then existing terms, by the express or implied consent and contract of all concerned. All the property belonging to the partnership, of whatever nature or kind, must be considered as its estate, and being so held by those individuals in their associated capacity

as a partnership, must be treated as liable exclusively, and in the first place, to none other that claims against that artificial capacity or person; and consequently, whether such property of the partnership be considered as real or personal estate, none of it can be held liable to the claim of a creditor, dowress, heir, devisee, widow, legatee, or next of kin, of any living or deceased partner in his natural capacity, until all claims against the partnership have been satisfied, and the whole concern has been so completely wound up and adjusted, as to enable each member of the partnership to take his due share of the surplus, or the residuum in his individual and natural capacity. And as a widow of a deceased partner can have dower assigned to her out of none other than such real estate of inheritance of which her husband had been in his natural capacity, sole seized during the coverture; and as it does not appear that *Samuel Hayes*, deceased, was, at any time, so seized of any real estate held by the partnership as in the proceedings mentioned, his widow can have no right to dower as claimed by her bill of complaint; and recollecting moreover, that as no one of the partners or his representatives can be entitled to any thing more than his due share of so much of the partnership property as remains after all its concerns have been entirely closed, it is only that residuum which is to be distributed according to its true value; and as that true value can only be ascertained by an actual sale, it has been deemed necessary, in all cases, to have it all sold, whether consisting of real or personal estate, so as to make an accurate distribution of the net proceeds of sale, considering the whole as personalty among the partners, according to the terms of the contract or partnership, or among the legal representatives of a deceased partner, according to their legal rights and interests."

"And the parties are hereby authorised and allowed to take testimony in relation to such accounts," &c.

From this decree, the complainants *Goodburn & Wife* appealed to this Court, under the act of 1845, ch. 367, mentioned in the opinion delivered in this cause.

Goodburn and wife *vs.* Stevens et al.—1847.

This appeal was argued before ARCHER, C. J., DORSEY, SPENCE and MARTIN, J.

By MAYER and REVERDY JOHNSON for the appellants, who insisted :

1. If the real estate here is to be regarded as personal, it is to be so treated, subject to the dower right of *Mrs. Goodburn;* and dower should be allowed to her, if not specially, at least, an equivalent out of proceeds of sales. This claim she has not abandoned, either by the tenor of the bill, or by having for some years deferred the filing of the bill.

2. The partnership, as to *Samuel Hayes'* interest, was at an end at his death; and his widow's rights, as administratrix, or for dower, are to refer to that period; the option being left to her, on her husband's share of property used by the survivors, to claim either interest or actual profits, earned between the death of *Hayes* and the filing of the bill, without, however, implicating her as partner, by claiming such latter *compensation* for the use of the property.

3. The proportion of the property to be allowed, as *Samuel Hayes'* interest, is, $\frac{157}{346}$. The personalty existing at his death, is proved by the answer and books of the defendants. For the specific chattels, whether preserved or consumed, the defendants are answerable; and there is no abatement to be made from the amount of claims belonging to the partnership, except for the small amount where positive proof of actual insolvencies has been given.

4. The amount due *Samuel Hayes*, for dividend-claims at his death, as well as the amount on general account, is to be fully allowed, and without abatement from any comparison between debts of the partnership and the amount of personal assets. For all such allowance to *Samuel Hayes*, the personal and real estate avails, are to be consolidated.

5. For any claim of *Mrs. Goodburn*, as administratrix, or for dower; she has a lien on the proceeds of sales, made in the cause, as to dower, paramount to all creditors of the concern, existing at (1825,) her husband's death; and, as admin-

istratrix, secondarily, to only the claims of such creditors. She is entitled in the same way for rent; as to her dower, or interest in lieu of it, on the average value, as stated by the auditor, of the realty at her husband's death.

6. The bonds of sale, and any payments on that account, made before *Hayes'* death by the partnership, are not to be regarded as charges primarily on the personal estate, nor, as to *Mrs. Goodburn's* dower, to interfere with her allowance out of the sales of the realty.

By McLEAN and McMAHON for the appellees.

The appeal now before the court is from the order of 19th January, 1845, and taken under the act of 1845, chap. 367, sec. 1st.

The appeal is, therefore, to be confined to that part of the order which determines " a question of right between the parties," and directs " an account to be stated on the principle of such determination."

The above order determines only,

1st. That the partnership continued to 1841, and

2ndly. That the complainants are entitled to dower, or an allowance in lieu thereof, only after the payment of partnership debts.

No other questions have been settled by the court below, and they cannot, of course, be considered by this court, without exercising original jurisdiction.

It will be contended, that the said order ought to be confirmed, because,

1st. If the partnership existing previously to the death of her husband, was continued by the express or implied consent of *Mrs. Hayes*, after his death, the order appealed from was correct in directing the accounts of the partnership to be taken down to the 31st August, 1841, and postponing her claim as administratrix and dowress, until the payment of all the partnership debts, existing at that period.

2nd. That the origin of the partnership, and the manner in which it was continued by the heirs and representatives of

deceased partners; its admitted continuance after the death of *Samuel Hayes*, the husband of the complainant, by all of his heirs at law and next of kin; the admitted negotiations and transactions of the complainant, the widow, with the partners after the death of her husband; the claim to relief made by her bill in this case; the prompt offer of the defendants by their answers to have a sale of her husband's interest, or of the property, as the court might direct, and to make her a reasonable allowance for dower, as asked by the bill; and the subsequent proceedings in the cause after such offer, do manifest an assent on her part to the continuance of the partnership, and an election not to have the works and property of the partnership stopped, and the business discontinued; but to permit them to be carried on for the benefit of the interest she had in the property, or which she represented.

3rd. That the claim made by her in her bill, to participation in the profits of the partnership, which was admitted to have been continued and carried on after the death of her husband, by the surviving partners and by the heirs at law and next of kin of her husband, was, of itself, a decisive election to take her share of the profits of such continuing partnership, and as such an assent to, and ratification of, the employment of her share of the property in the partnership; that such election, thus made, was a continuing election until the final accounts of the partnership were taken; that it was not competent for her to elect, to take profits for a part of the period, elapsing after the death, and to claim interest for the residue of that period; and that even if it were, her election made by the bill, to take the profits, continued unchanged, until the passage of the order appealed from; and therefore the order was correct in the directions given by it, as to the statement of the accounts of the partnership.

4th. As to the 3rd, 4th, 5th and 6th points made by the appellants, the appellees do not deem it necessary to present any counter propositions, as they are, as they conceive, points not presented by the order appealed from.

MARTIN, J., delivered the opinion of this court.

This is an appeal from the order of the Chancellor of the 19th of January, 1846, instructing the auditor as to the principles upon which he was to state the account between the parties.

By this order, the Chancellor has determined:

*First,* That the partnership, in which *Samuel Hayes* was concerned, was to be treated, as subsisting until the 31st of August, 1841, when it was dissolved by the decree passed in the case of the creditor's bill; and that the accounts of the partnership were to be brought down to that period.

*Secondly,* That the entire estate of the partnership, comprising both its real and personal property, was to be regarded as a fund applicable exclusively, and in the first place, to the payment of the debts of the partnership in preference to all other claimants.

And *Thirdly,* That the real estate held and owned by the partners, and used by them in the business of the partnership, was to be considered, as converted for all purposes into personalty—as possessing in all respects, the qualities and incidents of personal property, and therefore, not subject to the claim of dower.

The appeal has been prosecuted, at this stage of the cause, in pursuance of the act of Assembly of 1845, ch. 367, enlarging the right of appeal in cases where decrees or orders to account have been passed by the Chancery Courts; and a preliminary point was raised by the counsel, with respect to the questions which were properly open for adjudication on this appeal.

The *first* section of the act provides:—" That an appeal may be taken from any decree or order of the Court of Chancery or County Court, sitting as a Court of Equity, determining a question of right between the parties, and directing an account to be stated on the principle of each determination :" and it is clear, that in our examination of the order, we can only inquire into the correctness of the principles announced by the Chancellor, as the basis of the auditor's report. The right of appeal from these interlocutory orders, has been con-

ferred only where a question of right has been determined between the parties, and an account directed to be stated on the principle of such determination;—and it must be evident, that we could not consider any other questions, than those determined by the court below, for the government of the auditor, without exercising original jurisdiction. A power incompatible with the character and attributes of this tribunal, and, certainly not intended to be communicated by the statute, under which this appeal has been taken.

With respect then, to the first question decided by the Chancellor, we think he erred, in regarding this partnership as subsisting until the 31st of August, 1841.

The doctrine upon this subject has been stated with clearness and accuracy, by *Judge Story,* in his late work on partnership. He says, " although the partnership be fixed for a particular term or period, yet it is always understood as an implied condition or reservation, unless the contrary is expressly stipulated, that it is dissolved by the death of either of the partners, at any time within the period. This doctrine is founded in equitable principles, and is the natural result of the peculiar objects of the contract. Every partnership is founded in a *delectus personæ,* which implies confidence and knowledge of the character, skill, and ability of the other associates; and their personal co-operation, advice, and aid in the management of the business. The death of any one partner, necessarily puts an end to such aid and co-operation. If, therefore, the partnership were not put an end to, by the death of any one of the partners, one of two things must follow; either that the whole business of the partnership must be carried on by the surviving partners exclusively, at the hazard of the estate and interests of the deceased partners, or else, that the personal representative of the deceased, *toties quoties,* who may be a mere stranger, wholly unfit for and unacquainted with the business, must be admitted into the management. The law will not force either of these alternatives upon the parties; but it presumes in the absence of all contrary stipulations, that by a tacit consent, death is to dissolve the partnership, because it

dissolves the power of a personal choice, confidence, and management of the concern."

In *Crawshay* against *Maule*, 1 *Swans.* 508, *Lord Eldon* said, " The doctrine that death ends a partnership, has been called unreasonable. Much remains to be considered before this objection can be approved. If men will enter into a partnership, as into a marriage, for better and for worse, they must abide by it ; but if they enter into it, without saying how long it shall endure, they are understood to take that course in the expectation, that circumstances may arise from which a dissolution will be the only means of saving them from ruin ; and considering what persons death may introduce into a partnership, there is strong reason for saying, that such should be its effect. Is the surviving partner to receive into the partnership at all hazards, the executor or administrator of the deceased, his next of kin, or possibly a creditor taking administration?" And the Supreme Court, have declared in *Scholefield* against *Eichelberger*, 7 *Pet.*, 594, " That, although the liability of a deceased partner, as well as his interest in the profit of a concern, may by contract, be extended beyond his death; yet without such stipulation, death dissolves the concern." The same doctrine is announced in *Vulliamy vs. Noble*, 3 *Mer.* 614. *Crawford vs. Hamilton*, 3 *Mer.* 136. *Gratz vs. Bayard*, 11 *S. & Raw.* 41. *Dyer vs. Clark*, 5 *Metcalf*, 575, and in other cases to which it is unnecessary to refer. It must therefore be regarded as an established principle, resulting from the nature of the contract, and necessary for the protection both of the rights of the surviving partners, and the estate of the deceased, that the death of either of the partners produces *ipso facto* a dissolution of the concern; unless there is inserted in the contract, some provision imposing upon the surviving partners, and the representative of the decedent, an imperative obligation to continue it. There is to be found in this contract of partnership no such stipulation, and, we think that the death of *Samuel Hayes*, on the 20th of May, 1825, is to be treated as the true period of its dissolution.

The counsel for the appellee have however contended, that

if this partnership was continued from the death of *Samuel Hayes* to the 31st of August, 1841, with the express or implied consent of *Mrs. Hayes*, the order of the Chancellor in this respect was correct, and that the consent of the widow and administratrix to its continuation, is to be inferred from her conduct, and especially from the character of her bill, in which she claims a right to participate in the profits earned by the partners, between the death of her husband and the period of the institution of her suit.

*Samuel Hayes* died on the 25th of May, 1825. On the 26th of September of the same year, *Mrs. Goodburn* obtained letters of administration upon his estate, and on the 15th of January, 1830, she filed her bill, in which she charges, "That the personal property of her husband had been employed in the business of the partnership by the defendants, and prays that they may be compelled to account for the profits made since his death, out of the personal property, and that she may have a reasonable and just allowance for her dower in the lands." And assuming the facts stated in the bill to be true, it was the unquestionable right of the administratrix at her election, to demand either the actual profits made by the survivors from the use of her husband's share of the partnership property, or interest upon the capital thus employed.

In *Story on Part.*, sec. 343, it is stated,—"That dissolution by death puts an end to the partnership from the time of the occurrence of that event. It completely puts an end to the power and authority of the surviving partners, to carry on for the future the partnership trade or business. It is therefore the duty of the surviving partners to cease altogether from carrying on the trade or business thereof; and if they act otherwise, and continue the trade or business, it is at their own risk, and they will be liable at the option of the representatives of the deceased partner, to account for the profits made thereby, or to be charged with the interest upon the deceased partner's share of the surplus, besides bearing all the losses." The rule is also correctly given in a late treatise on this subject. *Cary*, 117.

The author says, "where the surviving partners continue the business, employing in it the share belonging to the representative of the deceased partner, and no express direction has been given by the deceased, relative to the continuance of the business, the party entitled to the share of the deceased is at liberty to choose either to receive the legal interest on the capital so employed, or to take the profits that have arisen from the use of such capital; and in order to enable a party so interested to determine his choice, a decree will be passed directing an inquiry, whether the account of interest or profits will be most advantageous; but unless under particular circumstances, the party having the choice cannot elect the interest for one period, and the profits for another, but must elect to take one or the other for the whole period."

In *Crawshay* against *Collins*, 15 *Ves.* 227, *Lord Eldon* said,—

"If the surviving partners do not think proper to settle with the executor, and put an end to the concern, but to make that, which is in equity, the joint property of the deceased and them, the foundation of increased profit, they must be understood to proceed on the principle which regulated the property before the death of their partner."

The same doctrine is declared and illustrated: In the cases of *Brown vs. Brown*, 1 *P. Will.* 140. *Hammond vs. Douglas,* 5 *Ves.* 539. *Exparte Ruffin*, 6 *Ves.* 119. *Brown vs. De Tasht,* 1 *Jacob*, 295. *Heathcote vs. Hulme*, 1 *Jac. & Walk.* 122, and is too firmly established to be questioned.

As therefore it was the undoubted privilege of the appellant on the case made by her bill, to demand the profits produced by the employment of her husband's share of the property, from his death to the institution of her suit; the assertion of this claim cannot be justly regarded as evidence of an assent on her part to the continuation of the partnership, so as to implicate her as a partner;—or as a ratification of the acts of the surviving partners.

We cannot perceive any thing in the conduct of the appellant, evincive of her assent to the continuation of this partner-

ship; and this question is placed beyond controversy by the commanding fact, that in her bill, she expressly prays that the defendants may be restrained from using, in the business of the concern, her husband's proportion of the personal estate.

There is another objection to the position taken by the counsel of the appellees, that cannot be overcome; and that is, that it is manifest from the answers of the surviving partners, that *they* never consented to receive the administratrix into the firm, as a continuing partner. While they acknowledge their liability to account to her for the partnership property as it existed at the death of *Samuel Hayes*, they reject the idea, that she possessed any authority to interfere in the management of the affairs of the company, subsequent to that period. We have already seen that a contract of this description, is one of personal confidence, in which the ability, skill and character of each partner is supposed to enter into the consideration of his associates, in the formation of the connexion, and that therefore, there can be no legal continuance of a partnership dissolved by death, in the absence of a new assent on the part of the survivors. You cannot impose upon the surviving partner the obligation to introduce into the partnership the representative of his former associate. *Thornton vs. Dixon,* 3 *Bro. C. R.* 200. *Marquand vs. New York Manufacturing Company,* 17 *John.* 535. *Pearce vs. Chamberlain,* 2 *Ves. Sr.* 33.

We think therefore, that the death of *Samuel Hayes* on the 20th of May, 1825, is to be treated as the period of the dissolution of this partnership, and that the accounts are to be taken at that time, for the purpose of ascertaining the condition of the partnership, and the rights of the respective partners to the joint property.

The *second* and *third* propositions determined by the Chancellor, relate to the question, as to what extent and what purposes the real estate of this partnership was to be treated as converted into personalty? We consider it as now established by at least a preponderance of authority, and upon proper and just grounds, that the whole partnership estate, whether con-

4      v.5

sisting of real or personal property, is to be regarded in the view of a court of equity, as a consolidated fund, to be appropriated primarily and exclusively to the satisfaction of all the partnership engagements. In *Fereday vs. Whightwick*, 4 *Con. C. R.* 319, the master of the rolls said,—

" The general principle is, that all property acquired for the purpose of a trading concern, whether it be of a personal or real nature, is to be considered as partnership property, and to be first applied accordingly, in satisfaction of the demands of the partnership."

In *Hoxie vs. Carr*, 1 *Sum.* 183, *Mr. Justice Story*, in delivering the opinion of the court, says,—

" A question often arises, whether real estate purchased for a partnership, is to be deemed for all purposes personal estate like other effects. That it is so, as to the payment of the partnership · debts, and the adjustment of partnership rights, and winding up the partnership concerns is clear, at least in the view of a court of equity." And again, he says,—

" The question, however, in the present case, is not whether real estate, when it is partnership property, becomes to all intents and purposes, in cases of intestacy and wills, personalty, but whether it is to be so treated in equity, as between the partners themselves and the creditors of the partnership. It seems to be the established doctrine of courts of equity, that it is to be treated as personalty, as between the partners and their creditors, in whosoever name it may stand on the face of the conveyance." This principle is sustained by the cases of *Dyer vs. Clark*, 5 *Medf.* 562. *Howard vs. Priest*, 5 *Medf.* 582, and is to be received we think, as the correct doctrine upon this subject.

But the true question presented for our consideration on this branch of the case, and that to which the argument of the counsel has been addressed is : whether, assuming the partnership to have been solvent, on the 20th of May, 1825, the period of its dissolution, the interest of *Samuel Hayes* in the partnership lands, is to be treated as real estate, descendible to his heirs, and chargeable with dower ; or as changed for all purposes

into personal estate, and distributable as such among his personal representatives?

It cannot be denied, that upon this question there has been both in England and in the courts of the United States, great diversity of judicial opinion and decision. But the case before us is clear of any agreement between the partners, direct or implied, impressing upon their real estate, the character of *personalty*, and under such circumstances, we consider the true rule to be, that the interest of the deceased partner in the partnership lands, is to be treated as real estate, and that the appellant is entitled to a suitable allowance out of the proceeds of the sale of these lands, as an equivalent for her dower; provided of course, the partnership shall be found to have been solvent at the period of its dissolution.

The doctrine that real estate purchased with the partnership funds for its use, and on its account, is to be regarded in a court of equity, as the personal estate of the company for all the purposes of the partnership, stands upon a familiar and just principle. It is the clear case of an implied or constructive trust, resulting from the relation which the partners bear to each other, and from the fact, that the estate was brought into the firm, or purchased with the funds of the partnership, for the convenience and accommodation of the trade. For this reason, in whosoever name the legal title may reside, the estate is held in the eye of a court of equity, for the use of the partners as the *cestui que trusts*, and if a partner dies, the legal estate of which he was seized as a tenant in common, passes to his heirs or devisees, clothed with a similar trust, in favor of the surviving partners, until the purposes for which it was acquired have been accomplished.

But when all the claims against the partnership have been satisfied, the partnership account adjusted, and the object of the trust fulfilled, in a case, where the partners have not either by an express or implied agreement, indicated an intention to convert their lands into personal estate; no solid reason can be assigned, why the real estate should not be treated in a court

of equity, as at law, according to its real nature, and consequently chargeable with the widow's dower.

The proposition thus announced, will be found to be sustained among other cases; by *Thornton vs. Dixon,* 3 *Bro. C. R.* 200. *Bell vs. Phyn,* 7 *Ves.* 456. *Balmain vs. Shore,* 9 *Ves.* 508. *Cookson vs. Cookson,* 8 *Simons, C. R.* 529, and by a very elaborate and able opinion, delivered by Chief Justice Shaw, in *Dyer vs. Clark,* 5 *Medf.* 562. In this case it appeared, that the real estate in controversy, was purchased by the partners, with the partnership funds, for the use and convenience of the trade. On the death of *Burleigh,* one of the partners, his administrator sold his undivided moiety of the lands for the sum of fifteen hundred dollars. The firm was represented to be insolvent, unless the proceeds of the real estate so sold by the administrator, should be applied to the liquidation of the partnership accounts. The prayer of the bill was, that the plaintiff might be allowed to retain the rents which had accrued since the decease of *Burleigh,* to be applied to the adjustment of the partnership accounts, and that the defendant might be restrained from paying the proceeds of the real estate to the individual creditors of *Burleigh.* The widow and heirs of the deceased partner, also asserted their claims upon the fund.

In this case, in reference to the rights of the widow, the court say:

" That the right of the widow is not distinguishable from that of the creditors, and heirs of the deceased partner. That as far as this estate was held in trust by her deceased husband for the purposes of the partnership, she was not entitled to dower. For all beyond that she was entitled, because he held it as legal estate, unless she is barred by her release."

It follows from the views thus expressed, that we consider the partnership as dissolved on the 20th of May, 1825, and that, *that* is the period at which the partnership accounts are to be stated.

That the whole estate of the partnership, consisting both of its real and personal property, is to be applied exclusively, and

in the first place, to the payment of all the partnership engagements, as they existed on the 20th of May, 1825.

That if the partnership was solvent at the period of its dissolution, the widow of *Samuel Hayes* is entitled to a proper allowance out of the proceeds of the sale of the partnership lands, as an equivalent for her dower. But as to what sum is to be regarded as a fair equivalent for her dower, under the circumstances of the case, and whether she has a lien for her dower, on the proceeds of the sale, are questions upon which we express no opinion, as they are not open for adjudication on this appeal.

The order of the Chancellor is reversed, and the case remanded to the Court of Chancery for further proceedings.

**DECREE REVERSED WITHOUT COSTS AND CAUSE REMANDED.**