AUGUSTUS McLAUGHLIN *vs.* DAVID BARNUM and AUGUSTUS K. BARNUM. DAVID BARNUM and AUGUSTUS K. BARNUM *vs.* AUGUSTUS McLAUGHLIN, and others.

*Modification of a Decree—Rents and Profits—Meliorations and Permanent improvements.*

The Circuit Court of Baltimore City, passed a decree directing a sale " of the grounds which formed the site of the City Hotel, as it existed at the death of the testator, David Barnum, with all the buildings and improvements thereon, as existing at the date of the decree, including as well the hotel part thereof, as the rooms or apartments, described in the third and fourth clauses of said will, but excluding therefrom the lot described in the first clause of the will, as Mrs. Ann Barnum's lot, with the buildings thereon,"—said sale to be made, " subject, however, to the ground-rents, and to the operation of the deeds of trust from David Barnum, &c., to George Brown and D. Winchester, bearing dates respectively, 27th September, 1825, and 11th May, 1826 ;"

McLaughlin *vs.* Barnum.

these deeds created what is called City Hotel stock. By the terms of the stock certificates set out in these conveyances, the holders or their assigns were bound to accept the principal at any time, by the one deed, after the 1st of June, 1835, and by the other, after the 1st of June, 1840, when tendered by the grantors or their assigns, or any of them, as proprieters for the time being of the said City Hotel. Only so much of this stock as remained unextinguished was an incumbrance on the property. But this amount was unascertained. The decree further required that an account should be taken "of the rents and profits of the said City Hotel buildings and grounds, so adjudged to be sold, from the 31st of October, 1853, the date of the accrual of the title of the complainants," "the same to be taken on the basis of a reasonable rent for the said premises, as they were left by David Barnum at his death, without the meliorations and improvements made by Andrew McLaughlin after the death of said Barnum, and before the filing of the original bill in this cause;" and an account "of the present value of all ameliorations and improvements so made by the said Andrew McLaughlin, the same to be estimated according to the increased vendible value of said premises at the date of the decree, by reason thereof," also to ascertain and report, the annual amount of necessary and proper repairs, incurred by the occupiers of said property, in each and every year, since the 31st of October, 1853. HELD:

1st. That the decree of the Circuit Court in its designation of the property to be sold, was correct, but it should be so far modified as to require the sale to be made free of the incumbrance of the deeds of trust creating the stock debt, and the stockholders to receive payment of their claims out of the proceeds of sale, or a sufficient part thereof to be set aside for that purpose, and an account to be taken of the amount of the debt remaining unextinguished; or the sale to be made subject to the amount of the said stock debt, now remaining unextinguished; provided the amount of the same be ascertained and agreed to, by a written agreement of the parties, or their respective counsel, to be filed in the case before the passage of such decree.

2d. That the accounting for rents and profits must be from the time the complainants' title accrued, down to the day of sale under the decree, if the occupation continues to that date, upon the basis of a reasonable annual occupation-rent of the premises decreed to be sold, in the condition in which they were left by David Barnum, without regard to any meliorations or permanent improvements made thereon during any part of that period.

3d. That allowance must be made for the meliorations and permanent improvements made by Andrew McLaughlin since the death of David Barnum and prior to the filing of the original bill, the same to be as-

certained by an estimate of the extent to which these improvements may have enhanced the vendible value of the property at the time of sale under the decree, such vendible value to be fixed by the price obtained for the property at that sale.

4th. That the yearly rent should be estimated upon the basis, so far as repairs are concerned, that the occupiers, as tenants, were bound to make repairs necessary to preserve the property in the same condition in which it was at the period of David Barnum's death.

CROSS APPEALS from the Circuit Court of Baltimore City.

By the decree of this Court pronounced on the first appeal, 21st December, 1866 (*vide* 26 *Md.*, 119), and the opinion accompanying that decree, it was definitively adjudged, that the first clause in the will of David Barnum, the testator, was void and inoperative; that the third, eighth, ninth and tenth clauses, and the last paragraph of the fourth clause, and the entire codicil, shared the same fate, and that the complainants were, therefore, entitled to relief, the extent of that relief however being left to be settled upon further proof, and in the further progress of the cause.

The decree simply reversed the decree of the Circuit Court of Baltimore City, from which the appeal was taken, and remanded the cause for further proceedings.

After the cause had been remanded to the Circuit Court, the complainants filed their bill of revivor and supplement, chiefly for the purpose of following the profits realized by the principal defendants by the use of the original premises, into additions made to them.

A commission was issued, and a great deal of testimony was taken and returned, and the cause having been brought to a hearing, the Circuit Court, on the 14th July, 1869, passed a decree directing,

1st. A sale " of the grounds which formed the site of the City Hotel as it existed at the death of the testator, David Barnum, with all the buildings and improvements thereon,

as now existing, including as well the hotel part thereof, as the rooms or apartments described in the third and fourth clauses of the said will, but excluding therefrom the lot described in the first clause of the will, as Mrs. Ann Barnum's lot, with the buildings thereon."

2d. That said sale be made, " subject, however, to the ground-rents, and to the operation of the deeds of trust from David Barnum, &c., to George Brown and D. Winchester, bearing dates respectively, 27th September, 1825, and 11th May, 1826."

3d. An account to be taken " of the rents and profits of the said City Hotel buildings and grounds, so adjudged to be sold, from the time of the accrual of the title of the complainants," (31st October, 1853,) " the same to be taken on the basis of a reasonable rent for the said premises, as they were left by David Barnum at his death, without the meliorations and improvements made by Andrew McLaughlin after the death of David Barnum, and before the filing of the original bill in this cause."

4th. And an account " of the present value of all meliorations and improvements so made by Andrew McLaughlin, the same to be estimated according to the increased vendible value of said premises at the time of said decree, by reason thereof."

5th. Also to ascertain and report the annual amount of necessary and proper repairs, incurred by the occupiers of said property, in each and every year, since the 31st of October, 1853.

6th. And " in the event that the share of the complainants in the rents and profits should be less than their proportion of the present value of the improvements and meliorations of the premises, to be ascertained as aforesaid, the deficiency should be a charge on the complainants' shares of the proceeds of sale to be made under this decree."

From this decree the complainants and Augustus Mc-Laughlin, one of the defendants, appealed.

The cause was argued before BARTOL, C. J., BRENT, MILLER, ALVEY and ROBINSON, J.

*T. A. Linthicum, George H. Williams,* and *Thomas S. Alexander,* for the complainants.

The lot which is described in the decree as Mrs. Ann Barnum's lot, ought not to be excepted from the sale to be made. In the answer of the defendant to the original bill, it is admitted that this lot is "within and as part of the real property used for the said City Hotel, and covered by the structures making up the City Hotel." The complainants' plat No. 2 shows the connection, and the defendants have shown that the ladies' water-closets and baths are in the building on this lot, and the drainage therefrom and from the gentlemen's water-closets are carried off by one common sewer, which is shown to have been constructed at a considerable cost. Constituting thus a part of the establishment, embracing offices indispensable to the use thereof, and which seem to have been placed there originally by the testator, it is to be assumed that Andrew McLaughlin purchased out the reversionary interest in said lot for the common benefit of the parties interested in the City Hotel buildings and grounds. *Rothwell vs. Dewees,* 2 *Black.,* 618; *Van Horne vs. Fonda,* 5 *Johns. Ch. R.,* 407; *Palmer vs. Young,* 1 *Vern.,* 276; *Featherstonhaugh vs. Fenwick,* 17 *Ves.,* 310; *Holdright vs. Gillespie,* 2 *Johns. C. C.,* 30; *Blenitt vs. Merritt,* 7 *Br. P. C.,* 367; *Griffin vs. Griffin,* 1 *Sch. & Lefr.,* 352; *Owen vs. Williams, Ambl.,* 734.

The principle of these cases is also supported by the case of *Spindler vs. Atkinson,* 3 *Md.,* 409.

The sale ought not to be made subject to the operation

of the deeds of trust from David Barnum, &c., to George Brown and D. Winchester, bearing dates respectively September 27th, 1825, and May 11th, 1826.

The counsel for the parties had agreed that deeds of trust were made creating City Hotel stock to considerable amounts. But there is nothing to connect such adm'ssion with the deeds described in the decree.

There is nothing in the record to show that the debts secured by the deeds of trust, admitted by the agreement, were charged exclusively on the premises decreed to be sold.

If this clause be permitted to remain in the decree, the defendants will have an advantage over the complainants and all others who may be disposed to bid at the sale. The defendants know whether any portion of this debt, and if any, what part thereof, is outstanding. They can estimate the precise value of this supposed incumbrance, if it has not been wholly extinguished. The complainants and outside parties would be compelled to bid in ignorance of the fact, and consequently on the hypothesis that the whole original debt, principal and interest, may be enforced against the property. This clause of the decree, therefore, ought to be stricken out, and it ought to be declared that the purchaser shall have an indemnity against those debts, if any are yet outstanding, to the extent of his purchase-money, and that an account be taken of such part of said debts as may be outstanding. It appears that at least $10,200 of said debt has been paid by Andrew McLaughlin in his lifetime. *McGowan vs. Yerks,* 6 *Johns. Ch. R.,* 450.

The complainants are entitled to an account of profits actually realized by the occupation and enjoyment of the premises from the commencement of their title, and ought not to be limited to an occupation-rent for the ease of the defendants.

A trustee is accountable for all the profits he has real-

ized from the use and employment of the trust estate; and where the trust estate has been converted, the *cestui que trust* has the election to follow the funds into its new form of investment, and claim an account of the profits thence resulting, or hold the trustee accountable for the trust estate in its original form. *Diffenderffer vs. Winder*, 3 *G. & J.* 311; *Goodburn vs. Stevens*, 5 *Gill*, 23; *Docker vs. Somes*, 2 *My. & K.*, 655.

If one will confuse his property with that of another inextricably, he must endure the loss occasioned by such unauthorized admixture. *Chappell vs. Cox*, 18 *Md.*, 513; *Rose vs. Bevan*, 10 *Md.*, 467; *Hamilton vs. Rogers*, 8 *Md.*, 301.

The principle of equity ever has been that the trustee shall account for all the profits which he has realized from the employment of the fund. *Robinson vs. Robinson*, 9 *Law and Eq.*, 69–75; *Wedderburn vs. Wedderburn*, 2 *Keen*, 622; *Wedderburn vs. Wedderburn*, 4 *My. & Cr.*, 41; *Oliver vs. Piatt*, 3 *How.*, 333.

In the next place, there can be no doubt of the right of the defendants to be allowed the cost of repairs. The only question is in regard to their right to an allowance for improvements.

But the complainants deny that Andrew McLaughlin is to be treated as a *bonâ fide* possessor, and therefore deny his right to any allowance for improvements. He entered under the will of David Barnum, and with notice, therefore, of its contents and of the true construction thereof. 2 *Fonbl. Eq.*, B. II, ch. 633; *Tongue's Assignee vs. Nutwell* 17 *Md.*, 212; *Casey vs. Inloes*, 1 *Gill*, 502; *Gray vs. Bartlett*, 20 *Pick.*, 193; *Williams vs. Banks*, 11 *Md.*, 198; *Cooke vs. Kell*, 13 *Md.*, 469; *Miller & Mayhew vs. Williamson*, 5 *Md.*, 219.

It is also to be noted that Andrew McLaughlin does not, in his answer, deny notice of the claim of the complainants, although the bill charges him with notice.

And one who claims the protection of a purchase *bonâ fide* made for valuable consideration, and without notice, must, by plea or answer, expressly deny notice, though it be not averred. *Mitf. Pl.*, 320; *Baynard vs. Norris*, 5 *Gill*, 468; *Harris vs. Fly*, 7 *Paige*, 421; *Denning vs. Smith*, 3 *Johns. Ch. R.*, 345.

Holding then with notice of an adverse title, he is to be treated as a wrongful possessor. 2 *Story's Eq.*, *sec.* 799, *a*, defines " an innocent possessor " to be one who is " without *any notice* of any defect in his title." If he has notice of the instrument under which the adverse title is or may be advanced, he is a *wrongful* possessor. *Bright vs. Boyd*, 1 *Story Rep.*, 494; *Green vs. Biddle*, 8 *Wheat.*, 1; *Dormer vs. Fortescue*, 3 *Atkyns*, 130, 134; *Strike's Case*, 1 *Bland*, 77.

It is not necessary to show that Andrew McLaughlin entered *mala fide*—it is necessary for them to show affirmatively he entered *bonâ fide*. There may be a case of an entry not *bonâ fide* by a party who enters without bad faith; such a person is not entitled to protection, or, as the Kentucky Court of Appeals better express it, for the purpose of this case:

" Although in fact these improvements may not have been made *mala fide*, yet, in law, they cannot be considered as having been made *bonâ fide*." *Bell vs. Barnett*, 2 *J. J. Marshall*, 528.

As illustrative of the proposition that even a tenant for life cannot improve and charge the inheritance, *vide Naine vs. Majoribanks*, 3 *Russell*, 582; *Caldecott vs. Brown*, 2 *Hare*, 144; *Dixon vs. Peacock*, 3 *Drew*, 288.

And as to mortgagees, *Sandon vs. Hooper*, 6 *Beavan*, 246; *Dougherty vs. McColgan*, 6 *G. & J.*, 275.

And as to tenants in common, *Crest vs. Jack*, 3 *Watts*, 238; *Thurston vs. Dickinson*, 2 *Richardson Eq.* (*S. C.*), 317.

But this is even a stronger case; it is that of a *cestui que trust*, entering into possession under color of the in-

strument, whereby the trust is created, and holding in disappointment of the views of the testator, which required an immediate sale.

If Andrew McLaughlin is to be treated as a *bonâ fide* possessor during any part of his occupancy, and as such entitled to an allowance for improvements, the allowance is to be made as of the date of the outlay for such only as were "just and necessary," that is to say, such as were calculated to increase the profits of the hotel to an extent sufficient to justify the outlay. And no allowance ought to be made for improvements which were merely ornamental, and did not add to the capacity or convenience of the hotel, or to the dispatch of its business. *Jones vs. Jones,* 4 *Gill,* 87; *Bright vs. Boyd,* 1 *Story,* 494; *Israel vs. Israel,* 30 *Md.,* 120.

The Court below limits his right to an allowance for improvements made prior to the filing of the bill, and denies altogether the right of succeeding occupants to such allowances.

The allowance for improvements is to be made by way of recoupment from profits realized by the said Andrew McLaughlin, during his occupancy of said premises, and no part of the profits for which succeeding occupants may be accountable, are to be recouped in that account, nor is the value of said improvements to be a charge against the principal estate. 2 *Kent's Comm.,* 407.

All the parties who succeeded Andrew McLaughlin in the occupancy of the premises, came in *pendente lite* and with notice in fact of the title of the complainants, and therefore cannot claim to be treated as *bonâ fide* occupants; they are severally accountable for the profits actually realized by them respectively during the terms of their several and respective holdings. But they are not to be allowed for the cost of the improvements made by them, or any of them. And no part of the cost of improvements made by Andrew McLaughlin, prior to the commence-

ment of this suit, ought to be recouped from the profits realized by those who succeeded him in the possession of the premises.

I. Nevett Steele and William Schley, for Augustus Mc-Laughlin, and others claiming under Andrew McLaughlin.

The decree of the Court of Appeals, dated 21st December, 1866, merely decided that "the first clause of the will of the testator being void, and his purposes, therein declared, having been disappointed, the second clause became operative, and the complainants are entitled to relief." It did not decide the character or extent of the relief. That decree, therefore, only decided that the *first* clause was *void ;* that the purposes *therein declared,* having been disappointed, the second clause became operative; and that complainants were entitled to *relief*—but to what relief, and to what extent, was not decided. Nothing was settled, *ultra* the decree. The *reasons* assigned for the decree, are no part of the decree. The decree is its own and only expositor.

The decree does *not* decide whether the *offices* and *apartments* are covered, or not covered, by the second clause of the will. In fact, it was not a point discussed by counsel on either side. There were but four questions discussed on the first appeal : *firstly,* whether the trust proposed to be created by the *first* article of the will violated the established rule of law, concerning perpetuities; *secondly,* whether, in case said trust was declared void, the property intended to be comprised in said trust, passed under the residuary clause (the seventh article) of the will ; *thirdly,* whether, if the trust were declared void, and the Court should decide that the property intended to be comprised in the trust, did not pass under the residuary clause, it descended to the heirs at law, as property not effectually disposed of by the will ; and *fourthly,* if the Court should

decide that the trust was void, and that the property, intended to be comprised in said trust, neither passed under the residuary clause, nor by descent, whether the second clause was operative or not, as no sale, judicial or otherwise, had taken place. On this branch of the discussion, the only inquiry was, whether or not the second clause was in *operation*, not what would be its *effect* in operation.

The argument of the learned Judge, as to the scope of the second article of the will, was not a judicial opinion. It is not embodied in the decree. It was not an adjudication. The point was not before the Court; it was not argued by counsel, nor necessary for the decision of the points then before the Court, and, if considered by the Court, it was not adopted as a *final* determination. The opinion, as to the scope of the second article, was extra judicial—merely *obiter dicta*; it does not bind the Court; nor conclude the parties. It leaves the question open for discussion. *Honner vs. Morton*, 3 *Russell*, 78 (3 *Eng. Ch. Rep.*, 78–88); *Ram on Legal Judgment*, (9 *Law Library*,) *ch.* 5, *pages* 22, 27, 29, 31; *Graham vs. Maxwell*, 2 *Dow's Parliamentary Cases*, 314; *Bainbridge vs. Baddley*, 2 *Phillips*, 705 (22 *Eng. Chan.*;) *Mason's Ex. vs. Alston*, 5 *Selden*, 28; *Stevenson vs. Reigart*, 1 *Gill*, 25, *in connection with* 9 *G. & J.*, 336; *Raborg vs. Donaldson*, 28 *Md.*, 34, *in connection with* 26 *Md.*, 312; *Frisby vs. Parkhurst*, 29 *Md.*, 61, 65.

The second article did not embrace the rooms and apartments disposed of by the third article, and by the last clause of the fourth article of the will. These rooms and apartments are expressly excepted, in the first article, from the trust thereby intended to be created. And being validly disposed of, by future articles of the will; and disposed of in a manner which does not infringe the rule against perpetuities, it would seem to be *making* a will for the testator, to extend the operation of the *second* clause beyond the scope and purview of that clause; and so to frustrate the intention of the testator, clearly expressed,

in another part of the will; and thus *unmake* his will, to that extent, by a dubious and strained construction of this second article.

In the *first* article, in speaking of the renting of the City Hotel and City Hotel buildings, grounds, &c., at *t*, yearly rent of $10,000 per annum, it is expressly provided, that *said renting shall be for the term of three years, and " shall not include any of the offices or apartments of the basement story of the City Hotel buildings, save only what is now used for the lower bar and lunch-room of the hotel, and the apartments used for the culinary and other purposes of the hotel buildings."* And in a subsequent part of said article, in providing for leases for successive terms of ten years, the leases are to be for " the said hotel *part* of said buildings." It was not, therefore, the intention of the testator, in this first article, that the *renting* should include the rooms and apartments in the basement story, save those used in connection with the conducting the hotel for hotel purposes, to wit: *the lower bar and lunch-room,* and the apartments used for *culinary* and other purposes of the hotel buildings; and the power to lease, for successive terms, was *limited* to the hotel part of said buildings, and the rooms and apartments used in connection therewith. And in the introductory part of the second article, it is shown that this article was only intended to have effect, in case the testator's views, expressed in the first article, should be disappointed. The *third* article, which clearly expresses the *views* and will of the testator, in relation to the excepted rooms and apartments, as clearly demonstrates, that *his views,* expressed in the first article, were limited to the hotel part of the building, and to the rooms and apartments connected with the hotel. And as the *second* article has been declared to be a substitute for the *first* article, and as the first article, as has been shown, did *not* embrace the excepted room and apartments, it follows, as a consequence, that the excepted rooms and apartments

McLaughlin *vs.* Barnum.

are not embraced in the second article. 1 *Sheppard's Touch-stone*, 78, (30 *Law Library*, 156, 157;) 2 *Sheppard's Touch-stone*, 418, (31 *Law Library*, 269.)

The devises of the rooms and apartments, as made by the third article of the will, are unaffected by the rule against perpetuities. They are made to the respective devisees, *habendum to them and their heirs*. This is the language of a devise in fee. The direction, in a part of the third article, that "the trustees shall, from time to time, rent out said offices and rooms, or allow the same to be done, by the respective devisees aforesaid of said rents," does not prevent the respective devisees from taking immediate vested estates in fee, in the rooms and apartments to them respectively devised.

The devise of the rents to the devisees, is immediate and direct. They do not take *as cestuis que trust*, under the trustees; because there is no devise of these rooms and apartments to the trustees, as they are expressly excepted out of the first article.

It is an error to suppose, there can be no fee, except *in lands*. It may exist, independently of any estate in the soil. The question is, whether the thing claimed is or is not *inheritable*. If so, it is a present vested interest, descendible, and thus capable of alienation, by the devisee. 1 *Preston on Estates*, 64, 75; *Wright's Tenures*, 3; *Co. Litt.*, 1 *b.*; *Crabb on Real Property*, 18, (55 *Law Lib.* 14;) 1 *Sheppard's Touchstone*, 90, *Verbum Hereditament*, (30 *Law Lib.*, 183.)

A devise of rents and profits is a devise of the fee in the property. *Stewart vs. Garnett*, 3 *Simons*, (6 *Eng. Ch. Reps.*,) 407; 2 *Hilliard on Real Property*, 544; *Reed vs. Reed*, 9 *Mass.*, 372; *Fox vs. Phelps*, 17 *Wend.*, 393; *Anderson vs. Greble*, 1 *Ashmead*, 136; 2 *Jarman on Wills*, 534; *Johnson vs. Arnold*, 1 *Ves.*, *Sr.*, 171.

There is no difficulty in dividing a house into several parts. It may be inconvenient, but the Court nevertheless acts, upon application of a party in interest, however

small his interest. *Allnutt on-Partition,* 84, 87, (5 *Law Library;*) *Morgan vs. Turner,* 8 *Vesey,* 143; *Watson vs. The Duke of Northumberland,* 11 *Ves.,* 157, *note; Agar vs. Fairfax,* 17 *Ves.,* 546, *note.*

Now if *the Court* will divide a house, where there are several rights, may not the owner of the house himself divide it so as to create such several rights?

The testator had the right to devise to his trustees the ground and buildings, *except* as to certain rooms and apartments; and to devise, as he has done, said excepted rooms and apartments to other persons, in the manner expressed in his will. If he had so devised it, as to confer mere *personal* rights on the devisees, as a right *to occupy,* or only for life, there would have been no descendible estate given. But here the devises are to the respective devisees and *their heirs.*

As to the claim for rent:

Rent, *eo nomine,* is not recoverable, in this suit, to *any extent.* But, if recoverable to any extent, then it cannot go back, beyond the time of filing this bill.

Clearly, Andrew McLaughlin is not to be held to account, as if he were a bailiff or an agent for the owners. He was a *bonâ fide* occupant under conveyances, which he and others supposed, clothed him with a legal title; but which, at best, gave him estates for life of the several grantors. The rule in such cases, is the assessment of a reasonable occupation-rent, for such part of the hotel property as belonged to the testator, and which constituted the hotel, as described in his will. In fixing the amount, it would be more simple to fix the rent, on the theory that the tenant was to make necessary repairs. But the same result would be obtained, (but with much more trouble,) on the theory, that the tenant was to be allowed for necessary repairs; and, on ascertainment of the amount of repairs, to deduct the same from the gross rent.

The complainants are not entitled to claim any rent, in

respect of the excepted offices and apartments; nor in respect to the added stories and other permanent improvements.

The rents, when the amount shall have been ascertained, will not be a lien on any share of the proceeds of the property which may be allotted to the defendants, claiming under Andrew McLaughlin. It would be a merely personal demand, and would be payable by the respective pernors of the profits. So far as rents may be properly chargeable, as against Andrew McLaughlin, they are payable by his personal representatives, not by his devisees; and as far as received by the trustees, under the will of Andrew McLaughlin, or by the trustees, appointed by the Court to carry into effect the trusts of the will of Andrew McLaughlin, the remedy, if any, must be by application to the Court, in the matter of the trust estate of Andrew McLaughlin; or by remedy on the bond, recently given in conformity with the order of the Court of Appeals. *Morrison vs. Robinson*, 31 *Penn.*, 456; *Brooke vs. Barry*, 2 *Gill*, 83; *Drury vs. Conner*, 1 *H. & G.*, 220; *Wells vs. Bell*, 2 *G. & J.*, 458; *Hagthorp vs. Hook's Adm'r.*, 1 *G. & J.*, 305.

As to the permanent improvements:

With a single exception, the views of the learned Judge, so lucidly expressed in his opinion, on this point, are adopted and relied on, as truly announcing the law, in relation to permanent improvements. But the learned Judge was in error in limiting compensation for improvements to the time of the filing of the bill.

The property is to be sold in its *present condition*, increased as it may well be assumed, in vendible value, not only by improvements made *before* the time of filing the bill, but by improvements *since* made. Such last improvements may have been necessary to the proper use of the property as a first-class hotel. Besides this, Andrew McLaughlin, in right of his wife, was a tenant in common; and even on the theory of the complainants was the admitted

owner for the respective lives of the other children of David Barnum. And it would be a very harsh conclusion to say, that they were made *mala fide*, inasmuch as the Circuit Court of Baltimore City, in November, 1862, dismissed the complainant's bill. Thenceforth, until said decree was reversed on 21st December, 1866, the persons, who made the improvements during the intervening four years, could hardly be considered as in possession, *mala fide.* Above all, as the property is actually bettered, by said additional improvements, it would seem proper, in a Court of Equity, that the defendants should be allowed for the value of said improvements, to the extent that the same may have increased the present vendible value of the property. 1 *Story's Eq. Jur., sec.* 655 ; 2 *Story's Eq. Jur., sec.* 799, *a-*799, *b-*1234–5–6–7–8 ; *Jones vs. Jones,* 4 *Gill,* 87 ; *Teal vs. Woodworth,* 3 *Paige,* 470 ; *Town vs. Needham,* 3 *Paige,* 546–555 ; *Thomas vs. Thomas,* 16 *B. Monroe,* 420 ; *Bryant vs. Hambrick,* 9 *Georgia,* 133 ; *Strong vs. Hunt,* 20 *Vt.,* 614 ; *Swan vs. Swan,* 8 *Price,* 518 ; *Shine vs. Sough,* 1 *Ball & B.,* 444 ; *Bright vs. Boyd,* 1 *Story,* 494.

As to repairs :

The disbursements for necessary repairs should be allowed. They were indispensable to the use of the property as a hotel; and were necessary to prevent waste and destruction of the property ; quite as necessary as the payment of taxes, insurance, &c.

*E. Beatty Graff,* for John R. Barnum.

John R. Barnum, otherwise called John Barnum, one of the defendants, and claiming to be a grandchild of the testator, David Barnum, after having answered the supplementary bill, on the 5th of June, 1869, filed his petition and motion, asking that the complainants and all the defendants contesting his claim be required to furnish proof that they were the lawful issue and children of their al-

leged parents ; and that they be required to state specifically the grounds of their objection to his claim. The Court refused the motion, and by its decree of the 14th of June, 1869, reserved for future adjudication all questions relating to his claim for a share of the rents and profits and proceeds of sale. From the order refusing the motion, as also from said decree, John R. Barnum appealed.

Inasmuch as this Court has approved the refusal of the Circuit Court to allow the motion of said Barnum, and has decided that he had no right to appeal from the decree of the 14th of June, 1869, the very elaborate argument of *Mr. Graff*, in behalf of the legitimacy of his client, as also his views against the propriety of the decree are omitted.

*Edward Otis Hinkley*, appeared for Stannard and others, who also appealed from the decree of the 14th of June, 1869.

MILLER J., delivered the opinion of the Court.

Counsel for the several parties to these appeals, whilst differing upon other points, agree that a decree for a sale must be passed, and the two principal questions necessary now to be decided are:

1st. What is to be sold, and what provisions in this respect shall the decree contain?

2d. Upon what basis or general principles shall the accounts be stated.

*First.* To that part of the decree appealed from which designates the property to be sold, objection is taken on one side, because what is called Mrs. Barnum's lot is excluded, and on the other because certain rooms or apartments in the basement story of the hotel are included.

Mrs. Barnum acquired title in fee to her lot in 1838 ; and in 1849, after the death of her husband, the testator, she sold and conveyed it in fee to Andrew McLaughlin, for $5000. The position that title to this lot has passed, upon the doctrine of election, is wholly untenable. The

first clause of the will being void, and the second taking effect and being the only one that can be relied on, as making the requisite disposition to raise an election, no case of election is presented, unless it plainly appears the testator intended this second clause should affect this lot; for it is well settled the intention to raise an election must be clear and manifest from the will itself. There must appear on the face of the instrument a clear intention on the part of its author to dispose of that which is not his own. *Jones vs. Jones*, 8 *Gill*, 197; *Smith vs. Townshend*, 27 *Md.*, 389; 1 *Lead. Cases in Equity, White and Tudor*, 259. This lot is not designated or referred to in the second clause, and the general words of description there used, "said City Hotel, buildings, and grounds," in the absence of anything pointing to a more enlarged construction, must be confined to property which the testator himself owned, and could effectually dispose of by will. But the intent *not to include* his wife's lot is apparent from the fact that in the second clause no provision is made for her in lieu of it; whereas in the first clause an annuity of $300 is given to the wife in consideration of her ownership thereof, and the use of it for the hotel.

But the ground upon which the claim for its sale is chiefly rested is, that at the time of David Barnum's death this lot constituted part of the hotel premises, and was used in connection therewith; that by improvements subsequently made by McLaughlin, it is for the most part covered by structures, making up the Hotel buildings; water-closets and baths being in the buildings erected thereon, the drainage from which, and from other like parts of the premises, is carried off by one common sewer; that, thus constituting a part of the establishment, supporting apartments devoted to purposes indispensable to the use of the Hotel as such, which were erected and improved by the purchaser himself, he must be presumed to have bought for the common benefit of all parties jointly

interested with him in the Hotel buildings and grounds. In support of this position, reference is made to authorities announcing the well-established doctrine that if one of several devisees or tenants in common, holding under an imperfect title, buys in the outstanding title to the common property, the purchase will enure to their common benefit, upon contribution made to pay the purchase-money : to cases where a partner, without the knowledge of his co-partners, had obtained a renewal in his own name, of the lease of the premises where the joint trade was carried on, and was decreed to hold the renewed lease in trust for the partnership: to cases of mortgagees, executors, tenants for life, trustees, and parties treated in law or equity as occupying the relation of trustees, executors, or guardians, as executors *de son tort,* or where one without lawful authority intrudes upon and assumes the management of an infant's estate.   In all such cases if the party occupying or to be treated as holding these relations, gains any advantage by his possession of, or dealing with the property, he must hold for those beneficially interested, and not for his own individual benefit.   But the purchase of this lot was no interference or dealing with the property in which the purchaser was jointly interested with others, or removing any incumbrance thereon.   If it be conceded McLaughlin at the time of this purchase was tenant in common with any of the parties to this cause, and this is the most favorable light in which the complainants' claim can be presented, he was so only of the property which David Barnum owned at the time of his death, and upon which the second clause of his will operated.   Purchase of this lot did not impair or improve the title to that property, nor make the purchaser, in respect to such purchase, a trustee for his co-tenants, or place him in any of the relations to them above indicated.   There is no proof he purchased with rents and profits which he had collected and received from the common property.   And it would

be a doctrine both novel and strange to determine that a party cannot buy with his own money, and hold for his own benefit, any real estate contiguous to that in which he has an interest in common with others. Nor is it perceived how the use of the lot, or the erection of buildings thereon, and their connection with the buildings and fixtures on the common property can work a divestiture of the purchaser's title, so as to authorize the Court to decree its sale in this cause. It must be remembered that we are now dealing with title to real estate, it is that which is to be sold under the decree. The complainants have no title legal or equitable, derived under the will of their grandfather, to anything save the ground owned by the testator at the period of his death, constituting the site of the Hotel with the buildings then being thereon. This is all in which any common interest is created by the will, and, with the buildings and improvements now erected on the same property, is all the Court can in this proceeding decree to be sold for the purpose of partition, unless title to other property has been so acquired by all those interested in this, as to prevent the true owner, if he were a stranger, from recovering it in ejectment. It is not pretended there has been such adverse user and occupation of this lot for twenty years, as would prevent a recovery by the holder of the legal title; and by what other recognized mode of transfer of real estate has that title passed from him? Goods, money, and jewels, the title to which passes by delivery and possession, may sometimes be lost to the owner by confusing or commingling them with like property of others, but no authority has been cited, and it would be extraordinary if any could be found to show that the intermingling or connection of buildings or structures can effect a transfer of *title* to land. Real estate is not susceptible of confusion, and its title cannot be disposed of in that way. An easement in lands may be acquired by the erection and use for a sufficient length of

time, of superincumbent structures, which will pass as appurtenant to the property entitled thereto; but no easement on this lot, or any part of it, is here claimed, and none in fact exists. The property it is said will not sell for as much if this lot is excluded, because of the difficulty of severing the structures as they are now placed on and over the two properties; that for the purposes of a hotel, this lot and the use to which it has been put are indispensable, and in the hands of another proprietor, might prove a source of annoyance, and hence depreciate the market value of the property to be sold. This may be true, but the difficulty of separating other buildings and structures on other contiguous property purchased by the same party, to which all claim of title has been abandoned by the complainants, also connected, used with, and constituting part of the Hotel establishment as now carried on, is almost equally great, and deprivation of their use will certainly impair its value for hotel purposes; but how can this be remedied by the Courts? A Court of Equity ought not to allow property to be sold with a cloud upon the title which it can remove, and should see it is so offered in market as to pass a clear title to the purchaser, and realize its full value to the parties interested; but to accomplish this, legal rights cannot be infringed, nor parties be compelled to part with property in which the parties to the cause asking for a sale have no legal or equitable interest. Such is the case here. The holders of the legal title are standing upon their rights, and resisting a sale of this lot. Those rights must be respected, and if loss results to others as well as themselves from a refusal to sell, it is a loss which the Courts have no power to prevent. The foundation of the Court's jurisdiction to decree any sale in this cause, rests solely upon the fact that several parties have a common and undivided interest in certain property which can be separated and enjoyed in severalty, only through the medium of a sale. To decree in this cause a sale of

other property in which no undivided interest exists would be usurpation of authority, and the exercise of mere arbitrary power.

Counsel for the defendants, claiming under McLaughlin, have earnestly contended that the title to the rooms and offices in the basement story mentioned in the decree, and ordered to be sold, was not authoritatively determined by this Court when the case was before it on the appeal reported in 26 *Md.*, 119. The argument is that the decree passed on that appeal is its own, and the only expositor of what this Court then definitely decided, that the opinion was merely the reasoning of the Judge who delivered it, and not, on this point at all events, the binding and conclusive judgment of the Court. But if the decree is alone to be looked at, to ascertain what was decided, then it may well be asked what construction has been given to the will on any point? That decree simply reverses the decree below, and remands the case for further proceedings. Confined to this, it is impossible to discover on what grounds the reversal proceeded, whether the complainants were entitled to relief under the first clause, as in one aspect is claimed in the original bill, or against it as being void, and under the second clause. The decree is silent upon the subject, but counsel concede it has been adjudged that the first clause of the will is void, and that the second became operative. This concession necessarily comes from the judgment of the Court contained in its opinion. That opinion settles the rights of the complainants, so far as title to the property depends upon the construction of the will, and in all its definitive conclusions upon that subject, must be regarded as inseparable from the decree. Because title was thus established, the Court determined the complainants were entitled to relief, leaving the extent of that relief to be settled upon further proof, and in the further progress of the cause. That decision, upon every point to which it

appears the judicial mind was applied, and which was considered, adjudged and reached as a conclusion of the Court, is not only of the same authority as any other decision of the appellate Court, but on this appeal in the same cause between the same, or those claiming under the same parties, where the same relief is sought upon the same subject-matter, and where the case is in no respect variant from that presented on the first appeal, has become the *law of the case* in its further progress, binding upon this Court as well as the Court below. *Mitchell vs. Mitchell*, 6 *Md.*, 224; *Mong vs. Bell*, 7 *Gill*, 244. The whole will was before the Court for construction, and looking to the opinion delivered, we find the Court carefully considered all its provisions bearing upon the questions they were to decide, and not by way of argument or illustration, not using general expressions, not stepping beyond the case before them upon the record, but in direct and positive terms, all the Judges concurring, declared and adjudged that those clauses of the will which disposed of the rents of these basement rooms and other parts particularly specified, with the entire codicil, shared the fate of the first clause and fell with it. By that adjudication we are bound. It cannot be reversed in this case no matter how it may be treated in other like cases between other parties. We are not, however, to be understood as intimating we should have arrived at different conclusions, nor as questioning its force as an authority. The main points were elaborately argued, and we have not examined them with a view to determine whether, in our opinion, they were correctly disposed of in this very able judgment of our predecessors. But in deference to the earnest argument pressed upon our attention, we have considered the particular point now presented, and assuming as correct the decision that the devise in trust and the leasing power blended with it, contained in the first clause of the will, were void, because transgressing the rule against perpetuities,

and that the second clause took effect, we are entirely satisfied the Court was right in declaring the other specified clauses to be void also.   The devise in trust in the first clause is of " *all the buildings of said City Hotel, and all the grounds thereof,*" comprehending these rooms as clearly as any part of the premises.   From the *leasing power* given in this clause these apartments are excepted, and that power is there confined to what the testator calls the " *Hotel part* of said buildings and grounds."   In the third and the last paragraph of the fourth clause (which, by its terms, is to be read as part of the third) he disposes of the *rents* of these rooms in such terms as, doubtless, if standing alone, would, except as to one of them, pass an absolute interest; but by the third clause there is conferred upon the *same trustees,* to whom the legal estate in the entire premises had passed under the first clause, the *power* to lease, or to allow the devisees of the rents to lease these rooms also and for the same period, so far as it offends the perpetuity rule, being, *from time to time,* without any limitation.   It was essential to the execution of his favorite project of having the Hotel permanently kept up, that the trustees should have entire control of the leasing of these rooms, so that no business should be there conducted which would prevent or interfere with the carrying on of the Hotel.   But his plan of keeping up a permanent Hotel might be disappointed, and he, accordingly, by the second clause, provides for this contingency.   The descriptive terms as to the property on which this clause, when effective, was to operate, are not the " *Hotel part*" of the buildings and grounds to which the leasing power in the first clause was confined, but " said City Hotel *buildings* and *grounds,*" which plainly embrace *all* the buildings and *all* the grounds, the legal estate in which was, by the first clause, devised to trustees.   Reading, as we must, the whole will together, the intent appears plain, that if his views as to the permanent

conducting of the Hotel should be disappointed, then all the buildings and all the grounds on which they stood were to come under the operation of the second clause, and the proceeds of the whole be disposed of and distributed as there directed. We cannot suppose he intended, in case the second clause took effect, the interests of his widow and grandchildren should be impaired by having the title to one part of the buildings in one set of proprietors, and to the Hotel part, directly above, in another, thereby, to a great extent, diminishing the value of the latter. In our opinion he carefully provided against such consequences, by so framing the second clause as to embrace in its scope and extent all the property in the buildings and grounds that had passed by the previous devise in trust, and purposely extended to the same trustees a leasing power of equal duration over the whole, so that if the trust should fail it should fail as to all, and the second clause become operative as to all. It follows that, in its designation of the property to be sold, the decree is correct. But it directs the sale to be made subject to the operation of two deeds of trust executed in September, 1825, and May, 1826, respectively, creating what is called City Hotel stock, to the amount, as appears on the face of the deeds, of $65,000. By the terms of the stock certificates set out in these conveyances, the holders or their assigns are bound to accept the principal at any time, by the one deed, after the 1st of June, 1835, and by the other after the 1st of June, 1840, *when tendered* by the grantors or their assigns, or any of them, as proprietors for the time being of the said City Hotel. Only so much of this stock as remains *unextinguished* is now an incumbrance on the property. If this amount were ascertained, or agreed upon, there would be no objection to decreeing the sale subject thereto. The record furnishes no proof on this point, and the length of time since the deeds were executed and since the principal of the debt became pay-

able, is followed by the positive assertion in argument, that a considerable amount was paid off by David Barnum in his lifetime. Any such payment, if made, undoubtedly enures to the benefit of all the parties, including the complainants. But there is enough in the record to warrant the inference that the defendants claiming under McLaughlin have means not equally accessible to others, of knowing the precise amount of this incumbrance, and they would therefore stand on vantage-ground as bidders. This is obviously unfair, might occasion loss to the complainants and others having the same rights, and should not be permitted if it can be avoided. The property should, if possible, be so placed in market as to invite a fair and free competition among bidders having equal knowledge or means of knowing precisely what they are buying, and what purchase-money they will have to pay. In our opinion it is within the Court's power to reach this result. It is true, neither the trustees nor the stockholders are parties to this cause, but all those who, as proprietors of the property pledged, have the right under the deeds to redeem and pay off the debt, are parties, and the stockholders, by the terms of their contract, are bound *now to receive* their money, if tendered by these parties. We therefore see no jurisdictional or other difficulty, growing out of the want of proper parties, in ordering the sale to be made, free of this incumbrance, and declaring the stockholders will be required to receive payment of their claims out of the proceeds of sale, or a sufficient part thereof to be set aside for that purpose, and directing an account, upon notice given, to be taken of the amount of this debt now remaining unextinguished. By pursuing this course no injury can possibly result to any one, and in our judgment the justice of the case demands its adoption. The decree must therefore be modified as here indicated.

*Secondly.*—More difficulty is felt in settling the general principles upon which the accounts are to be stated. On

this branch of the case we shall confine our opinion strictly to the questions which appear to have been decided by the decree appealed from, both because it may be doubtful whether upon these appeals this Court has authority to go further, (*Goodburn and wife vs. Stevens,* 5 *Gill,* 1,) and because the decree itself has expressly reserved for further consideration and disposition all matters in controversy between the parties *not thereby adjudicated.* The main questions which this part of the decree presents for review relate to the mode of ascertaining rents and profits, the time when the accounting therefor is to commence, and whether any and what allowance shall be made for permanent improvements. These we proceed to dispose of in their order.

1st. There is no satisfactory foundation for the claim to an account of the *profits* realized by McLaughlin and the other occupants from the business of *hotel keeping,* which they carried on in the premises. In cases of express trusts, or where a party voluntarily assumes the management of a trust estate, and converts the property, and uses the proceeds, or the trust funds, consisting of money in hand, or collected from the rents of the trust property if realty, for his own purposes in trade or speculation, or invests them in lands or otherwise, so as to derive profit therefrom, the right of the *cestui que trust* to follow the funds in the new form of investment, and to an account of the actual profits thence resulting, or if this is withheld, to charge the trustee with interest and compound interest on the money so misapplied, may arise. But what application have authorities sustaining these doctrines to the present case? There is here no express trust, nor did these occupants voluntarily assume the collection and application of the rents of a trust estate, nor did they, by their occupation and use of these premises for this particular business, place themselves in such relation to the complainants as to make applicable between

them the rules and principles of equity, regulating the rights and duties of trustee and *cestui que trust.* The position of these parties is simply this: The complainants were merely part owners with McLaughlin, of the *grounds* and *buildings* which he and others have occupied. The latter with their own personal property, servants, capital, skill and labor carried on therein the business of hotel keeping (and the case would not be different if they had in the same way carried on the business of bankers or merchants), without paying the complainants as proprietors and landlords, their share of *the rent* of the premises. It cannot be said the rent which they thus failed to pay was thereby invested in and became part of the *capital* with which this business was conducted or made the complainants *partners* therein.

Where there is occupation of a farm or land used only for agricultural purposes, and the income and profits are of necessity the produce of the soil, the owner may have an account of the proceeds of the crops or other products actually sold or raised thereon, deducting the expense of cultivation. There are necessarily rents and profits in such cases, but even there, it is more usual to arrive at the same result, by charging the occupier, as tenant, with a fair annual money-rent. But the proprietor of city lots, with improvements thereon, can only derive therefrom as owner, a fair occupation-rent for the purposes for which the premises are adapted. This constitutes the rents and profits in the legal sense of the terms of such property, and is all the owner can justly claim in this shape from the occupier. The accounting for rents and profits must therefore be upon the basis of a reasonable annual occupation-rent of the premises decreed to be sold. The complainants were infants at the death of their father, and so remained at the time the original bill was filed. No *laches* can be imputed to them for not asserting their claim at an earlier date, and they are therefore entitled

to rents and profits from the time their title accrued. Such appears to be the settled rule in case of infants, and we discover no reason for making this case an exception. *Dormer vs. Fortescue*, 3 *Atk.*, 124 ; *Strike's case*, 1 *Bland*, 73 ; *Woods vs. Patrick*, 3 *Bibb*, 31.

2d. Shall any allowance be made to the defendants claiming under McLaughlin for meliorations and permanent improvements, and if so, for what improvements ? These were questions thoroughly discussed at bar, and we have attentively considered the arguments presented on both sides. The record shows with sufficient certainty that McLaughlin purchased out the interests of the widow and all the children of David Barnum, including the father of these complainants, supposing he was thereby acquiring an absolute interest: that he paid the full price of an absolute estate, and had no knowledge *in fact* of any defect in his title or of any adverse claim : that under the impression it was an absolute and not a mere life estate, and after obtaining the advice of eminent counsel that his title was good, he expended large sums of money in making permanent improvements upon the property. He had knowledge of the will, and the law imputed to him knowledge also of its true construction, in so far as to prevent his relying upon estoppel or the plea of *bonâ fide* purchaser without notice to *defeat* a recovery by the complainants, but the fact that a party cannot successfully maintain such a defence in bar of a recovery upon title, will not deprive him of any equity he may have for an allowance for improvements ; and especially not in a case where relief is sought against him as a defendant in a Court of Equity, upon an equitable title, accompanied by a demand upon him for .an account of rents and profits. In such cases a Court of Equity practically enforces the rule of the civil law, founded in natural justice, " *nemo debet locupletari aliena jactura*," as well as the cherished maxim of equity jurisprudence itself, that " he who seeks equity must do equity."

All that is required to entitle a defendant to claim this equity is that he be a *bonâ fide* occupant or possessor, and not a mere *tort feasor* or *mala fide* intruder, holding with full knowledge of his own position and of the adverse claim. The Supreme Court, in *Green vs. Biddle*, 8 *Wheat.*, 79, have defined a *bonâ fide* possessor, according to the doctrine of the civil law, to be one " who not only supposes himself to be the true proprietor of the land, but who is ignorant *that his title is contested* by some other person claiming a better right to it." The views of Judge Story on this subject are very clearly expressed in his work on Equity Jurisprudence. In section 1237 he says, the doctrine of compensation or lien for repairs and improvements is not confined by Courts of Equity to cases of agreement or joint purchase, but " they have extended it to other cases where the party making the repairs and improvements has acted *bonâ fide* and *innocently*, and there has been a substantial benefit conferred on the owner, so that, *ex æquo et bono*, he ought to pay for such benefit ;" and in section 799 *a*, " if a plaintiff in equity seeks the aid of the Court to enforce his title against an *innocent* person who has made improvements on lands, *supposing himself to be the absolute owner*, the aid will be given to him only upon the terms that he shall make *due compensation* to such innocent person to the extent of the benefits which will be received from these improvements ;" and in section 655, so where one tenant in common, " *supposing himself to be legally entitled to the whole premises*, has erected valuable buildings thereon, he will be entitled to an equitable partition of the premises, so as to give him the benefit of his improvements, or, if that cannot be done, he will be entitled to a compensation for these improvements." In *Jones vs. Jones*, 4 *Gill*, 87, this Court, after citing with approval, passages from *Powell on Mortgages*, to the effect that where a mortgagee, *thinking himself absolutely entitled*, expends considerable sums in repairs and lasting improvements, he will

be allowed such expenditures ; and if a party, conceiving himself to be owner, makes lasting improvements, a Court of Equity will not take the estate from him without com- pelling the plaintiff to make some allowance for the sums expended in improving the premises, say, that the defend- ant in that case had shown himself entitled to the benefit of these equitable principles, because he had purchased in ignorance of any defect of title, though apprised of the claim of the plaintiff below, and took possession and made the improvements, under the opinion of counsel that the title was clear, and because all his acts and the circum- stances of the case demonstrated that, at the time of his purchase and when the improvements were made, *he be- lieved his title to be a good one.* The same doctrine has re- ceived the approval of Chancellor Bland in *Hagthorp vs. Hook*, 1 *G. & J.*, 305. In the very recent case of *Tongue vs. Nutwell*, *ante*, 302, this Court, in an action at law for *mesne profits*, declared the rule to be well settled that a defendant in an action of that kind, if he has in good faith made lasting improvements on the land, may be allowed the value of them against the rents and profits claimed by the plaintiff. This was said, too, in a case where the de- fendant's title was derived under a will of which, and of its true construction, he was held to have had notice in the ejectment case, (17 *Md.*, 212,) so far as to prevent his relying upon the doctrine of *estoppel in pais* to bar the plaintiff's recovery. In *Smith vs. Townshend*, 27 *Md.*, 368, the benefit of the same equity was granted to a defendant trustee, under an express trust, who had purchased the property from his *cestuis que trust*, in a case where the latter applied for and obtained in equity relief against the deeds which were set aside and the title restored to them. A multitude of other instances of the application of the same doctrine might be cited. So firmly grounded in natural justice does a claim of this kind seem to be, that Judge Story, in *Bright vs. Boyd*, 1 *Story's Rep.*, 478, *and*

McLaughlin *vs.* Barnum.

2 *Story*, 605, sustained a *bill* to enforce it as a substantive ground of equity, and this decision was followed by the Court of Appeals of Kentucky in *Thomas vs. Thomas*, 16 *B. Monroe*, 420. It may be doubtful, however, whether, from the present state of the authorities, the weight of judicial opinion and precedent goes further than to sanction the exercise of jurisdiction in such cases in favor of defendants, or as auxiliary to some other relief properly cognizable in equity ; we are not prepared to say what our decision would be upon a case directly presenting the question. The case before us does not call for any judgment upon that point. It is a case where defendants are asserting the claim against plaintiffs, who are seeking the aid of a Court of Equity to enforce equitable rights. It is within the jurisdiction of the Court, is sustained by abundant authority, and sanctioned by every principle of natural justice and equity. Allowance must therefore be made for permanent improvements put upon the property by McLaughlin prior to the filing of the original bill. Nothing, however, can be allowed for any improvement since that date, for even according to the doctrine of the civil law, he then received such notice of the defect of his title and of the adverse claim, as to place him in the position of making improvements thereafter at his peril. 8 *Wheat.*, 79.

Such are the rights of the parties, and so they are settled by the decree before us. The question then remains, how are the rents and profits to be charged, and how is the amount of allowance for the improvements to be ascertained? Instead of charging rents and profits of the property as enhanced in value by the improvements, and allowing the cost of the latter, the rule of the decree is to charge the former as of the property in the condition in which it was at the period of David Barnum's death, and to ascertain the allowance for the improvements by the extent to which they have augmented the vendible value

of the property at the present time. After a careful consideration of the subject we are satisfied this rule is not only equitable, but will more nearly than any other work out substantial justice to all parties, and that the circumstances of *this case* imperatively demand its adoption. To avoid misconstruction, however, we state explicitly that this rule applied to this case requires the charge for rents and profits from the time the complainants' title accrued, down to the day of sale under the decree, if the occupation continues to that date, to be made on the basis of a reasonable yearly occupation-rent of the premises in the condition in which they were left by David Barnum, without regard to any meliorations or permanent improvements made thereon during any part of that period; and that the amount of allowance for the specified meliorations and improvements, that is to say, those made by McLaughlin since the death of David Barnum and prior to the filing of the original bill, is to be ascertained by an estimate of the extent to which these improvements may have enhanced the vendible value of the property at the time of sale under the decree, such vendible value to be fixed by the price obtained for the property at that sale. This, as we understand it, is what the decree intended in this regard. Its language may possibly give rise to some difficulty from ambiguity of expression and want of clearness, and as a new decree must be passed, all doubt on this point should be removed by declaring therein that the accounts are to be taken as above directed. The decree also directs an account to be taken of necessary and proper *repairs* incurred by the occupiers in each and every year since the accrual of the complainants' title. The only purpose of such an account is to deduct the amount so ascertained, from the yearly rent. But, in our opinion, the yearly rent should be estimated upon the basis, so far as repairs are concerned, that the occupiers, as tenants, were bound to make repairs necessary to preserve the

property in the same condition in which it was at the period of David Barnum's death. This will reach the same result as if the amount yearly expended in repairs were first ascertained and then deducted from the gross rent, and will save the trouble and expense of stating a separate account of repairs. In this particular, also, there must be a modification of the decree. In all other respects than those in this opinion specially pointed out, it is free from objection.

We are unable to perceive how, by the operation of these rules, any possible wrong can be done to the complainants. They will not be thereby improved out of their estate. They will recover their proper share of the rents and profits of all the property to which they derived title under the will of their grandfather, as of the condition in which he left it, calculated upon the basis of a reasonable yearly rent from the time their title accrued, to the time of sale under the decree, and will also receive their share of the proceeds of sale of the property as it now stands enhanced in value by all the improvements put upon it, and out of the fund thus accruing to them, will be required to pay their proportionate share of the specified improvements made before they filed their bill, ascertained and measured by the increased value such improvements shall have conferred upon the property at the time of sale. They will recover with rents and profits, property which McLaughlin purchased from their father at its full value in fee, and be improved out of nothing to which in conscience they have any claim, but simply prevented, to a reasonable extent, from being enriched at the expense of an innocent *bonâ fide* possessor who expended his money in permanent improvements, under the belief honestly entertained that he was absolute owner.

The petition of John R. Barnum asking that the complainants and all the other defendants be required to establish their legitimacy by adducing proof of the mar-

McLaughlin *vs.* Barnum.

riage of their respective parents was properly dismissed, and as the decree expressly reserves for future adjudication all questions relating to his claim for a share of the rents and profits, and proceeds of sale, he has no right to appeal therefrom on that ground. We must observe, however, that if the case is not altered by further proof on this subject from the position in which it now stands, he will be entitled to his proper share as the son of his father Richard Barnum, and the grandson of the testator, David Barnum.

It will be seen from what has been said that in all its substantial provisions the decree below is correct, and that we mainly concur in the views so well expressed in the opinion of the Court accompanying that decree. The error, however, in ordering the sale subject to the operation of the deeds of trust creating the stock debt, requires a reversal and the passage of a new decree upon the remanding of the cause. The new decree thus to be passed should also contain the modifications indicated in this opinion upon the other specified points.

This disposes of all the questions determined by the decree, and for the reasons already given we have refrained from considering others presented in argument whether relating to the accounts or to the extent of the distributive shares to which any of the parties may be entitled. None of these questions were decided by the decree appealed from, but are thereby expressly reserved for future adjudication, and we express no opinion upon them, not only for this reason, but because in the further progress of the case, most, if not all of them, may be adjusted or become unimportant.

*Decree reversed and cause remanded.*

(Decided 8th December, 1869.)

On the 5th of January, 1870, Augustus McLaughlin and others, claiming under Andrew McLaughlin, filed their petition in this Court, in the foregoing case, asking for a modification of its decree, so as to permit the Circuit Court of Baltimore City to pass a decree in the cause, authorizing the property directed to be sold, to be sold subject to the "City Hotel stock" debt. The complainants answered the petition, and the same, after hearing, was dismissed by order of the Court. The following opinion accompanied the order of dismissal:

BARTOL, C. J., delivered the opinion of the Court.

The petition of the appellees in the second above entitled case, for a modification of the decree of this Court in said case must be dismissed.

In the opinion accompanying that decree, we said, that if the precise amount of the stock debt *now remaining unextinguished* were ascertained or agreed upon, there would be no objection to decreeing the property to be sold *subject thereto ;* but that the record furnished no proof of what that amount was.

We have again examined the record and can discover no reason for modifying our opinion upon that point. The statements contained in the answer on this subject were put in issue by the replication, and were not supported by proof; the answer itself is not evidence. The agreement of counsel contained in the record, which we had not overlooked, simply admits that deeds of trust were made creating the City Hotel stock mentioned in David Barnum's will, one of them for the sum of $27,900, and the other for $34,900; but when made or what part of the debt so created now remains unextinguished is not stated or admitted. Under the agreement "that copies of the deeds referred to might be filed at any time as evidence in the cause," the deeds were produced, and by the consent of counsel, were used as evidence at the hearing of the

case in this Court. These deeds disclosed the fact that the stock debt thereby created was by the one $30,000 and by the other $35,000, that they were executed in 1825 and 1826 respectively, and also the other facts stated in our opinion, in reference to the times when the principal could be paid, at the option of the grantors, &c.

In this state of the proof, it seems to us clear that we were fully justified in saying the record contained no proof of the amount of the debt now outstanding and unextinguished, and constituting the actual incumbrance on the property.

The statement of that amount set forth by this petition and the accompanying exhibits, is not admitted by the appellants in their answer thereto, and we have no authority to take proof on the subject, and adjudicate the question in the first instance in this Court. Nothing remains, therefore, but to dismiss the petition.

At the same time, we repeat what we have before said, that if the parties can agree upon this amount, it will be entirely proper, that the sale should be made subject to the incumbrance, and the opinion heretofore pronounced does not forbid such an agreement now to be made. But lest the Court below might regard its language as too stringent or mandatory on this point, we now state that the opinion is to be construed, or if necessary is hereby modified so as to permit the decree to be passed by that Court, directing the sale to be made *subject to the amount of the said debt now remaining unextinguished;* provided the amount of the same be ascertained and agreed to, by a written agreement of the parties or their respective counsel to be filed in the case before the passage of such decree.

If no such agreement can be entered into, the decree must direct the sale to be made free from that incumbrance, as indicated in the former opinion of this Court. In the examination of the question presented by the peti-

tion, we have considered the several suggestions made in the answer thereto filed by the appellants, asking that certain other changes and modifications be made in the decree; and after full consultation we think that the opinion and decree heretofore filed, except in so far as the same have been hereby modified, ought to stand.

(Decided 6th January, 1870.)